### Dormon Farms Company *v.* Stewart.

### Opinion delivered February 12, 1923.

1. Mines and Minerals—Oil and Gas Lease—Mutuality.—An oil and gas lease giving the right to explore for oil for five years, and providing that, if no well is commenced within the first year, a rental charge of 50 cents per acre paid on or before the expiration of the year would keep the lease in force for another year, and that similar payments each year thereafter would continue the lease in force, though no well was started, *held* not void for want of mutuality.

2. Mines and Minerals—Payment of Rental to Depositary.—Under an oil and gas lease which reserved an annual rental, and provided that any assignment or sale by the lessor should not be binding on the lessee until notice in writing had been given him, *held* that the lessee and his assignees had a right to make the rental payments to the lessor by leaving them at a depositary bank named in the lease for the credit of the lessor until advised by writing of a sale of the land.

3. Mines and Minerals—Assignment of Oil Lease.—An assignment of an oil and gas lease which did not describe the lands involved, but referred to a previous recorded lease in which the lands were described, *held* a sufficient description.

4. Tender—Sufficiency.—Under an oil and gas lease providing that any assignment or sale of his interests by the lessor shall not be binding on the lessee until after notice in writing had been given him, *held* that, though the lessor subsequently sold

the property, the lessee and his assignees, in the absence of any notice of the sale, by tendering the rental to the lessor's designated bank, made a sufficient tender to keep the lease in force.

Appeal from Howard Chancery Court; *James D. Shaver*, Chancellor; affirmed.

*J. S. Butt* and *W. P. Feazel,* for appellant.

1. While equity usually abhors forfeitures, this does not appear to be true of oil and gas leases, and the courts, where there is a failure of development, will usually cancel such leases upon slight defaults. 152 Pac. 597; 157 Pac. 308; 127 App. Div. 761; 112 N. Y. Sup. 13; 119 La. 793; 22 La. Ann. 280; L. R. A. 1917-B, 1190; 29 Okla. 719; 26 Okla. 772.

2. In this case the contract is immaterial and void. If not binding on the lessee, it is not binding on the lessor, and may be canceled at his option. 32 Tex. Civ. App. 47; 95 Tex. 586; 134 La. 701; 25 Okla. 809; 138 Am. St. 942; 47 W. Va. 107; L. R. A. 1917-B, 1184; Thornton on Oil & Gas, § 270; *Id.* §§ 54-62.

3. It was incumbent on appellees to designate the particular part of the land embraced in the original lease upon which they desired to pay rent. This they failed to do. Thornton on Oil & Gas, § 328; 220 S. W. 140.

4. There was no proper tender. Payment of rent to Goodlett, with knowledge that he had transferred the land and had no right to receive the rent, was not sufficient. *Harrell* v. *Saline Oil & Gas Co.,* 153 Ark. 104.

*Thomas, Frank, Milam & Touchstone,* of Dallas, Texas, *W. C. Rodgers,* and *J. H. Brennan,* of Wheeling, W. Va., for appellees.

1. The rule which appellant seeks to invoke with reference to enforcement of forfeitures in oil and gas contracts applies to the peculiar nature of the mineral; but where, as in this case, there is no question raised as to adjoining wells taking oil from the land by drainage,

the reason for the rule does not exist. 91 Ark. 407, 418; 109 Ark. 465-6-7; 101 Ark. 331, 335.; 126 Ark. 389, 399; 141 Ark. 280, 285; 139 Ark. 542, 556; 155 U. S. 665. The liberal construction sought by appellant has never been carried to the extent of forfeiting rights of a lessee who has faithfully kept his part of the contract. 155 U. S. 665. Moreover, the facts in the case relied on by the appellant are substantially different from the facts in this case. 112 Ark. 342, 352; 123 Ark. 365, 368; 150 Ark. 43, 48.

2. To sustain appellant's contention, it would be necessary to eliminate portions of the contract, such as the clause authorizing the payment in cases of partial assignments, and the clause requiring the furnishing of a written transfer before the lessee or assignees would be justified in paying the rentals to any one other than the original owner, and the stipulation that the down-payment applies as a consideration to every part of the lease. The courts will not make or modify contracts for parties. 66 Ark 295; 111 Ark. 173. No useful purpose could be served by the lessee at the time of making the deposits stating what part of the lease he owns. Therefore the law does not require it. 96 Ark. 376; 132 Ark. 289; 133 Ark 16; 104 Ark. 119; 109 Ark. 465; 114 Ark. 359; 127 Ark. 261; 141 Ark. 235.

3. The original lease and the various assignments of parts thereof were recorded. Appellant, when it purchase from Goodlett, took with notice of the provisions of the lease and these assignments. 14 Ark. 69; 15 Ark. 184; 35 Ark. 100; 50 Ark. 322; 103 Ark. 425; 107 Ark. 484; 97 Ark. 397; 58 Ark. 84; 23 Ark. 735.

4. Appellant's contention that the royalties mentioned in the lease must be the "sole and moving consideration for the execution of the contract" is not borne out by the instrument itself, which provides, among other things, that "the consideration first recited herein, the down-payment, covers not only the privilege granted to the date when said first rental is payable,  *   *   *

but also the lessee's option of extending that period * * * and any and all rights conferred." The primary consideration is thereby tied to every part of the contract, and the court will not inquire into the adequacy of the consideration. 145 Ark. 310; *Rogers* v. *Magnolia Oil & Gas Co.*, 156 Ark. 103; 33 Ark. 97; 99 Ark. 233; 127 Ark. 28; 23 Ark. 735; 106 Ark. 1. A primary consideration of one dollar is sufficient consideration. Mere inadequacy of consideration is not a ground for cancellation. 23 Ark. 735.

5. The assignment to Carmen Oil Company was not void for uncertainty of description, since its assignor's title was duly recorded and contained a correct description, and reference thereto was made in the assignment to Carmen Oil Company. 6 Ark. 191; 28 Ark. 75; 30 Ark. 513.

SMITH, J. On January 20, 1920, W. V. Goodlett, who was then the owner of 640 acres of land in Howard County, executed to Earl A. O'Hara an oil and gas lease thereon. On November 20, 1920, O'Hara executed to the Superior Producing and Refining Company an assignment of the lease on 200 acres of the land; and that company, on September 19, 1921, reassigned the lease to the 200 acres to the Carmen Oil Company. One of the questions in the case is whether this last assignment is void for the reason that it fails to describe the land. The lease to O'Hara was filed for record January 20, 1920; the assignment to the producing company was filed for record December 9, 1920; and the assignment from the producing company to the Carmen Oil Company was filed for record September 24, 1921.

On January 30, 1920, O'Hara assigned to W. P. Stewart the lease on 120 acres of the land. This assignment was filed for record December 20, 1920. On January 30, 1920, O'Hara assigned to C. A. Gates the lease in so far as it covered 160 acres of the land; and this assignment was filed for record February 20, 1920. On March 18, 1921, W. V. Goodlett, the original lessor, exe-

cuted and delivered to the Dormon Farms Company his warranty deed wherein he conveyed the entire 640 acres.

The original lease from Goodlett to O'Hara contained the following provisions:

"If the estate of either party hereto is assigned (and the privilege of assigning in whole or in part is expressly allowed), the covenants herein contained shall extend to their heirs, executors, administrators, successors and assigns, but no change in the ownership of the land or assignment of rentals or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment, or copy thereof; and it is hereby agreed that, in the event this lease shall be assigned as to a part or as to parts of the above described lands, and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rents due him or them, such default shall not operate to defeat or affect the lease in so far as it covers a part or parts of said lands upon which the said lessee or any assignee thereof shall make due payment of said rental.  *  *  *  *

"It is agreed that this lease shall remain in force for a term of five years from this date (January 20, 1920), and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee. In consideration of the premises the said lessee covenants and agrees, if no well be commenced on said land on or before the 20th day of January, 1921, this lease shall terminate as to both parties, unless the lessee, on or before that date, shall pay or tender to the lessor, or to the lessor's credit in the Planters' Bank & Trust Company bank at Nashville, Arkansas, or its successors, which shall continue as the depository, regardless of changes in the ownership of said land, the sum of $320, which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from said date. In like manner and upon like

payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first mentioned herein, the down payment, covers not only the privilege granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred.''

The Dormon Farms Company brought this suit to cancel these leases, and, as ground therefor, alleged that the lease to O'Hara was void for lack of mutuality, and that the assigned leases were void because the sublessees claiming them have not paid or properly tendered the rental provided for in the lease to O'Hara.

The lease to O'Hara was evidently prepared by an attorney whose chief concern was to protect the rights of O'Hara, the original lessee, and the sublessees. At any rate, the lease serves that purpose most excellently.

We think the contract was not void for the want of mutuality. For the recited consideration the right to explore oil for five years was granted. It is true there was no requirement that the lessee develop the land during the first year; but, as appears from the portion of the lease quoted above, it was provided that the lease should expire on its first anniversary, unless on or before that date the lessee had paid the annual renewal charge of fifty cents per acre. A similar payment before each subsequent anniversary was essential to continue the lease in force. This annual payment of fifty cents per acre, aggregating $320 on the entire acreage, was a substantial and sufficient consideration to support the lease, although during the time covered by it no attempt was made to explore for oil. There was no allegation or proof that the land was in or near a developed field. We proceed therefore to a consideration of what we regard as the real question in the case, that is, whether the payments due on or before January 20, 1921, were made or properly tendered.

It will be observed that the lease to O'Hara expressly gave him the right to assign the lease in whole or in part, and provided that any assignee should have the same rights to the part assigned him as O'Hara originally had to the whole tract. It will be observed also that the lease to O'Hara imposed on him no duty to advise Goodlett as to any assignments he might make. On the other hand, the lease did impose on Goodlett the duty of advising the lessee of any change in the ownership of the land, and provided that no change in the ownership or assignment of rentals or royalties should be binding on the lessee until after the lessee had been furnished with a copy of the transfer or assignment. It is not contended that Goodlett ever advised the lessee of his sale and conveyance of the land to the plaintiff, Dormon Farms Company.

The evident purpose of this provision was to leave the lessee in no doubt as to where the annual rental should be paid. The contract made the Planters' Bank & Trust Company, of Nashville, the depository for the purpose of receiving this annual rental, and the lessee, or his assignee, had the right to make the payments there, and to the credit of Goodlett, until advised in the manner provided by the contract to make them otherwise. The plaintiff, Dormon Farms Company, was affected with notice of this provision, because the lease to O'Hara and the assignments thereof were in the chain of its title and were all of record at the time it received its deed from Goodlett.

The question whether the sublessees have continued in force the leases to themselves must be decided by a consideration of the facts attending the separate payments or tenders of payments by each of them, for the reason that the lease to O'Hara provides that the default of any assignee in the payment of the proportionate part of the rent due by him "shall not operate to defeat or affect the lease in so far as it covers a part or

parts of said lands upon which the said lessee or any assignee thereof shall make due payment of said rental.''

The court found the facts to be that the assignees had paid the annual rental provided for by the O'Hara lease, and dismissed the complaint as being without equity, except as to a portion of the land upon which the court found the rent had not been paid. The O'Hara lease, in so far as it related to that portion of the land, was canceled, and, as there is no appeal from that finding, that tract passes out of the case.

As to the sufficiency of the description of the land in the assignment of the lease by the Superior Producing & Refining Company to the Carmen Oil Company, it may be said that, while the land was not there described in terms, that assignment referred to the assigned lease to the Superior Producing & Refining Company in which the lands were described, and in this manner the descriptions were made definite and certain. 8 R. C. L., sec. 134, p. 1078; 18 C. J., sec. 67, p. 184; *Cooper* v. *White,* 30 Ark. 513.

On the question of the sufficiency of the tender made by the Carmen Oil Company the facts are as follows. In apt time that company wrote the bank at Nashville as follows: ''Inclosed please find New York draft for $100, which please place to the credit of W. V. Goodlett, the same being a 12 months' rental of an oil and gas lease containing 200 acres and located in Howard County, Arkansas, due January 22, 1922, and described as follows: The E½ of the E½ of section 14, and all of section 13, except the E½ of the E½, all in T. 9 S., R. 29 west.'' These were the only directions given by that company as to the lands on which it wished to pay the rent. The letter stated the purpose of paying on 200 acres, but did not describe the particular land. Payments by the other sublessees were made in the same manner without describing the land. It also appears that when Gates remitted to the bank the sum of $80 with directions to credit the account of Goodlett, the bank returned the remittance

and directed Gates to make the check payable to Dormon Farms Company; but Gates responded by again remitting the $80 to be credited to the account of Goodlett.

The remittances under the circumstances were properly made to the bank at the designated depository. No one questioned the right of the appellant, Dormon Farms Company, to appropriate these remittances, and the leases which were in its chain of title showed the lands on which each of the sublessees were offering to pay. They each remitted fifty cents for each acre covered by their leases. This was the sum required by the O'Hara lease, and the Dormon Farms Company should have assumed that the sublesses were offering to pay on the land respectively covered by their leases.

It was not contended that either Goodlett or the Dormon Farms Company had given Gates, or the other sublessees, notice of the conveyance by Goodlett to the Dormon Farms Company, and the president of that company admitted that he would not have accepted the tender had it been made to him in the manner in which it was made to the bank. The bank was not a party to the lease contract except in so far as it consented to act as the named depository, and there was nothing about this contract which authorized the bank to direct the sublessees how payments should be made. The information given Gates by the bank was correct, but, had incorrect information been given by the bank, as a result of which the tender might have been made to the credit of one not entitled thereto, there is nothing in the record to show that the Dormon Farms Company would have been bound by the improper tender resulting from the erroneous direction to the bank. Gates had the right, therefore, to disregard the suggestion of the bank, and the second remittances made by him to the bank must be regarded as a continuance of the original tender, which was made in apt time and manner.

What we have said about the tender by Gates and the

Carmen Oil Company is decisive of the case of the other sublessees.

It follows, from what we have said, that the court properly refused to cancel the leases, and that decree is affirmed.