### HUMPHREY v. FLANAGAN et al.
#### No. 4931.

Court of Civil Appeals of Texas. Texarkana.
Jan. 30, 1936.

Wynne & Wynne and Wm. A. Wade, all of Longview, for plaintiff in error.

W. H. Sanford, of Longview, for defendants in error.

SELLERS, Justice.

J. A. Humphrey as plaintiff brought this suit in the district court of Gregg county against M. T. Flanagan, and others not necessary here to mention, to recover a certain mineral estate in and under 100 acres of land, a part of the Headright survey of McKinney and Williams, located part in Gregg county and part in Upshur county. Plaintiff in his petition alleged an action in trespass to try title, and specifically alleged as follows:

"Plaintiff further shows that he purchased from H. S. Grant, the then owner thereof, on or about July 3, 1931, an undivided 1/16 interest in the oil, gas and other minerals in and under said tract; that said tract was at that time subject to the terms of a certain oil and gas lease made by H. F. Whitehurst and wife, Ruby Ozelle Whitehurst, as lessors, to J. C. Barton, as lessee, dated January 3, 1931, recorded in Vol. 64, page 189, of the Deed Records of Gregg County, Texas; that said lease provided for the payment of rental on or before January 3, 1932, to cover the privilege of deferring the commencement of drilling after said date; that no rentals were paid to this plaintiff and that as to this plaintiff and as to said undivided 1/16 interest said oil and gas lease lapsed and terminated on January 3, 1932, and this plaintiff became the owner of an undivided 1/16 interest in and under said tract free and clear of said lease and is now the owner thereof; that the defendants claim that said lease is still in force and effect and covers and pertains to the interest of this plaintiff in said oil, gas and other minerals and said defendants claim to be the owners of said lease and that plaintiff is entitled to have his title quieted against the claim of the defendants.

"Wherefore premises considered, plaintiff prays that the defendants, and each of them, be cited to appear and answer herein and that plaintiff have judgment for the title and possession of the above described premises; that his title be quieted to an undivided 1/16 interest in the oil, gas and other minerals in and under the above described tract of land as against the claims of the defendants, and each of them, for costs of suit and such other and further relief as he may be entitled to either in law or in equity."

The defendant answered with a general demurrer, general denial, and plea of not guilty. The case was tried before the court, without a jury, upon an agreed statement of facts, from which it appears that H. F. Whitehurst and wife in 1930 owned the fee title to the 100 acres of land involved. On July, 30, 1930, they executed an oil and gas lease upon the land to one Reynolds. This lease was acquired by Shell Petroleum Corporation, and while it was in force Whitehurst and wife by a royalty deed conveyed to M. T. Flanagan, the defendant herein, an undivided one-half interest in all the minerals in and under such land, but such conveyance was expressly made subject to the above-mentioned oil and gas lease and provided that when such lease was for any reason terminated defendant would own with Whitehurst and wife the mineral estate in equal proportions. This lease terminated on December 1, 1930, for failure to pay the required rentals and was re-leased by Shell Petroleum Corporation on August 20, 1931.

On January 3, 1931, Whitehurst and wife executed to J. C. Barton an oil and gas lease on the same 100 acres of land. Flanagan never signed this lease. On the same date it was executed Barton assigned it to Shell Petroleum Corporation. After the execution of this second lease and subject thereto, Whitehurst and wife on April 30, 1931, executed to H. S. Grant an undivided one-sixteenth interest in and to the mineral estate. Said instrument specifically provided that Grant should only be entitled to a one-sixteenth interest in the rents and royalties and a one-sixteenth interest in all rentals paid under the terms of the lease for delay-

ed drilling operations. On July 3, 1931, Grant conveyed his one-sixteenth interest to J. A. Humphrey, the plaintiff herein, and the assignment was recorded December 18, 1931.

On May 9, 1931, M. T. Flanagan and others brought suit against Whitehurst and wife and Shell Petroleum Corporation to recover an undivided one-half interest in the oil and gas and other minerals in and under the land involved. The disposition of this suit is reflected by the following stipulations in the agreed statement of facts:

"That said suit was compromised and settled between the plaintiffs and said Shell Petroleum Corporation, the agreement of compromise being that said Shell Petroleum Corporation should relinquish its claim to the oil and gas leasehold estate covering the West 40 acres of said above described land and should be in all respects confirmed in its ownership of said oil and gas leasehold estate on the east 60 acres as against the plaintiffs' claim.

"Pursuant to said agreement of compromise, said Shell Petroleum Corporation, under date of August 20, 1931, executed and delivered to M. T. Flanagan and J. W. Modesett a transfer of all its right, title, interest and claim in and to the oil and gas lease covering the West 40 acres of said tract (in the proportion of ⅔ to M. T. Flanagan, and ⅓ to J. W. Modesett), and the said M. T. Flanagan, J. W. Modesett and J. C. Turner executed to Shell Petroleum Corporation a confirmation and adoption of the oil and gas lease made by H. F. Whitehurst and wife to J. C. Barton in so far as the same covered the East 60 acres of said tract; and said suit was dismissed by judgment of dismissal dated October 6, 1931. Said assignment and transfer from Shell Petroleum Corporation to M. T. Flanagan and J. W. Modesett was delivered to M. T. Flanagan on or about September 20, 1931, and was filed for record in the office of the County Clerk of Gregg County, Texas, on the 21st day of September, 1931; and recorded in Vol. 98, page 420, of the Deed Records of Gregg County, Texas. The ⅔ interest acquired by M. T. Flanagan thereunder was taken and held by said M. T. Flanagan in trust for himself and J. C. Turner in equal shares."

J. C. Turner and J. W. Modesett held an interest in the minerals under Flanagan, but such interest as they held was later reassigned to Flanagan and they are not parties to this suit. The assignment made by Shell Petroleum Corporation to Flanagan and others in pursuance of the agreement is as follows:

"Shell Petroleum Corporation to M. T. Flanagan

"Assignment of Interest in O&G Lease

"Dated: August 20th, 1931

"Filed: September 21st, 1931

"Recorded: Vol 98 page 420 Deed Records of Gregg Co. Texas

"File No. 25898

"Whereas, on the 3rd day of January, 1931, a certain oil and gas mining lease was made and entered into by and between H. F. Whitehurst and wife and D. F. Smith, Lessors, and J. C. Barton, Lessee, covering the following described land in the County of Gregg and Upshur and State of Texas, to-wit:

"All that certain tract or parcel of land lying and being partly in Upshur and partly in Gregg Counties on the H. R. Survey of McKinney and Williams, described as follows:

"Beginning at the NE corner of said McKinney and Williams Survey,

"Thence South 698 vrs. south east to said McKinney and Williams survey,

"Thence West 840 vrs. southeast corner of a 100 acre subdivision of said survey;

"Thence North 698 vrs. northeast corner of said 100 acre subdivision;

"Thence East 840 vrs. to beginning and containing 100 acres.

"Said lease being recorded in the office of the County Clerk of Gregg County in Book 64 page 189–190. And,

"Whereas, the said lease and all rights thereunder or incident thereto are now owned by Shell Petroleum Corporation

"Now, therefore, for and in consideration of One Dollar (and other good and valuable consideration), the receipt of which is hereby acknowledged, the undersigned, the present owner of the said lease and all rights thereunder or incident thereto, does hereby bargain, sell, transfer, assign and convey unto M. T. Flanagan, an undivided ⅔ interest and unto J. W. Modesett, an undivided ⅓ interest of its right, title and interest in and above described land together with all personal property used or obtained in connection therewith to M. T. Flanagan, an undivided ⅔ interest and J. W. Modesett an undivided ⅓ interest and their heirs, successors and assigns.

"In Witness Whereof, The undersigned owner and assignor has signed and sealed

this instrument this 20th day of August, 1931.

"Shell Petroleum Corporation
"By: R. Van Der Woude,
"President.
"Attest:
"P. R. Chenoweth
"Secretary        E
"Seal—             R"

The agreed statement of facts contains the following stipulations:

"That the oil and gas lease from H. F. Whitehurst and wife, Ozelle Whitehurst to J. C. Barton contains, among others, the following provision:

" 'If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is·expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or assignments of rentals or royalties shall be binding on the lessee until after the *lease* has been furnished with a written transfer or assignment or a certified copy thereof; and it is hereby agreed in the event this lease shall be assigned as to a part or as to parts of 'the above described lands and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rents due from him or them, such default shall not operate to defeat or affect this lease in so far as it covers a part or parts of said land upon which the said lease of any assignee thereof shall make due payment of said rental.'

"That, except as set out in the next paragraph, no notice was ever given by H. S. Grant or J. A. Humphrey or any other party to Shell Petroleum Corporation or M. T. Flanagan, nor to J. C. Barton nor to J. W. Modesett nor J. C. Turner, of the transfer from H. F. Whitehurst and wife to H. S. Grant of said ⅟₁₆ interest, nor of the transfer by H. S. Grant to J. A. Humphrey (unless the recording of the mineral conveyances as hereinabove set out constituted constructive notice); that no certified copy of the conveyance from Whitehurst to Grant, nor of the conveyance from Grant to Humphrey, was ever furnished the lessee, J. C. Barton, nor the Shell Petroleum Corporation, nor M. T. Flanagan, nor J. W. Modesett, nor J. C. Turner; and that neither J. C. Barton, M. T. Flanagan, J. W. Modesett or J. C. Turner had any actual knowledge on or prior to January 3, 1932, that H. F. Whitehurst and wife, Ozelle

Whitehurst had conveyed any interest to H. S. Grant, nor that H. S. Grant had conveyed any interest to J. A. Humphrey, nor that either Grant or Humphrey was in anywise interested in the land or the minerals thereunder or in the royalties or rentals under said oil and gas lease.

"That on or about December 17, 1931, J. A. Humphrey mailed to Shell Petroleum Corporation at Dallas, Texas, a photostatic copy of the mineral conveyance from H. S. Grant to J. A. Humphrey (said copy was not certified), and accompanied the same with a letter as follows:

" 'Please find enclosed herewith photo copy mineral conveyance on Whitehurst 100 acre in Gregg & Upshur Co. which you own on the lease on please file this for your records an mail original for record Gregg Co at Longview.

" 'Very truly yours,    J. A. Humphrey.'

"The above-mentioned photostatic copy and letter was received by Shell Petroleum Corporation at its office in Dallas, Texas, on December 18, 1931, and such Shell Petroleum Corporation paid to Joe A. Humphrey his proportionate share of the rental due, of $1.00 per acre, on the 60 acres of the lease which it retained.

"That prior to January 3, 1932, H. F. Whitehurst and wife, Ozelle Whitehurst, for a valuable consideration, paid and delivered to them by M. T. Flanagan, J. W. Modesett and J. C. Turner, and accepted by the said H. F. Whitehurst and wife, Ozelle Whitehurst, in full satisfaction and payment of the rentals provided by said lease to 'J. C. Barton to be paid on or before January 3, 1932, for the privilege of deferring the commencement of drilling for one year thereafter (insofar as said lease covered the West 40 acres of the 100 acre tract) waived the payment in money of said rentals. That neither M. T. Flanagan, J. W. Modesett, nor J. C. Turner, nor anyone acting for them paid to J. A. Humphrey, nor deposited to his credit in the depository bank named in said lease any sum of money whatever for rentals under said lease on the West 40 acres of said lease, the rental being paid by Shell Petroleum Corporation on the East 60 acres only."

Upon the foregoing facts the trial court entered judgment for defendant denying plaintiff any interest in the mineral estate of the land other than his royalty interest of one-sixteenth under the Barton lease, from which judgment the plaintiff has duly prosecuted this appeal by writ of error.

■ Plaintiff in error's first three propositions relied upon for reversal of this case are each predicated upon the theory that there was a partition of the mineral estate had between defendant in error Flanagan and Shell Petroleum Corporation, whereby the Shell lease was confined to the east 60 acres of the 100-acre tract and released as to the west 40 acres of such tract. The record, in our opinion, wholly fails to show any such partition. The suit between Flanagan and Shell Petroleum Corporation was dismissed, and in carrying out the agreement whereby the suit was dismissed the Shell Petroleum Corporation not only assigned to Flanagan its lease on the 40 acres here involved, but a glance at its assignment will disclose that its lease on the whole 100 acres was assigned to Flanagan. Just how Flanagan confirmed the lease on the east 60 acres to the Shell Petroleum Corporation does not appear, evidently for the reason that such 60 acres is not involved in this suit. It seems that Flanagan acquired the Shell Petroleum Corporation's lease on the west 40 acres of the 100-acre tract in the customary way of assignment, and there was no release of the 40 acres from such lease by virtue of any partition. Having reached this conclusion, the plaintiff in error's first three propositions will not be discussed.

■ It is contended by plaintiff in error that the lease involved terminated as to his one-sixteenth interest for the reason that the rentals due under the terms of the lease on January 3, 1932, were not paid, and if paid they were paid to the lessor and this would not constitute a payment to him of his proportionate part. Whitehurst and wife, it appears, prior to January 3, 1932, for a valuable consideration waived the payment of the rentals in money. In our opinion the legal effect of the above waiver was a settlement of the rentals due the lessors on January 3, 1932, as effectively as if the rentals had been paid in money. However, plaintiff in error makes the point that the assignee of the lessee had no right to pay his proportionate part of the rentals to the lessor. There is no dispute of the fact that plaintiff in error was entitled to one-sixteenth of the rentals paid for the extension of the lease and would be entitled to a forfeiture of this lease as to his interest but for the provisions of the lease above quoted which provides: "No change in the ownership of the land or assignment of rentals or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment or a certified copy thereof and it is hereby agreed in the event this lease shall be assigned as to part or as to parts of the above described land and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rents due from him or them such defaults shall not operate to defeat or affect this lease in so far as it covers a part or parts of said land upon which the said lease of any assignee hereof shall make due payment of said rentals." This provision of the lease was binding on plaintiff in error, and his failure to comply therewith relieved defendant in error of any duty to pay him the rentals in controversy. The following cases bear upon this point: Jackson v. United Producers' Pipe Line Co. (Tex.Civ.App.) 33 S.W.(2d) 540; Simms v. Mitchell (Tex. Civ.App.) 44 S.W.(2d) 1056; Dormon Farms Co. v. Stewart, 157 Ark. 194, 247 S. W. 778.

Finding no error in the record, the judgment of the trial court will be affirmed.