## TIDE WATER ASSOCIATED OIL CO. et al. v. HAMMER et al.

### No. 5926.

Court of Civil Appeals of Texas. Texarkana.

May 14, 1942.

Rehearing Denied May 21, 1942.

W. H. Sanford, and Conan Cantwell, both of Dallas, for appellants.

McEntire & Shank and Chas. F. Umpress, all of Dallas, Ben D. Clower, of Tyler, Gordon R. Wellborn, of Henderson, and L. L. James, of Tyler, for appellees.

JOHNSON, Chief Justice.

Mrs. Sallie Bell Hammer inherited from her mother, Mrs. Sallie Thompson, an undivided ⅑ interest in a certain 81-acre tract of land in Rusk County. In 1916 L. B. Thompson, as guardian of the estate of Sallie Bell Hammer and her eight brothers and sisters, all minors, purported to convey said 81 acres to W. B. Thompson in exchange for a 77-acre tract. W. B. Thompson died intestate in 1921, survived by his wife, Mrs. Maude Thompson, and six children. January 28, 1931, Mrs. Hammer and seven of her brothers and sisters executed a quitclaim deed purporting to convey all their right, title and interest in the 81-acre tract to Mrs. Maude Thompson. Mrs. Maude Thompson, for herself and as guardian of two of the minor children, and joined by the four adult children of W. B. Thompson, deceased, executed an oil and gas lease covering 10 of the 81 acres to Imperator Oil Corporation, and an oil and gas lease covering the remainder of the 81 acres (except 2½ acres not here involved) to L. O. McMillan. Imperator Oil Corporation assigned its lease to L. O. McMillan, whereupon L. O. McMillan assigned both leases to Tidal Oil Company, reserving an interest in the form of an oil payment out of the ⅞ leasehold. July 13, 1932, Mrs. Hammer and seven of her brothers and sisters filed suit, in trespass to try title, in the District Court of Rusk County, against Mrs. Maude Thompson and the six heirs of W. B. Thompson, deceased, and others, including L. O. McMillan and Tidal Oil Company for the 81 acres of land. This suit was styled Mrs. Sallie Bell Hammer et al. v. J. M. Crim et al., and is referred to in this record as the "Crim suit." The Thompson defendants answered and specially pleaded the guardian's deed above mentioned, and allege that Mrs. Hammer had ratified the guardian's deed by conveying an undivided interest in the 77 acres received in exchange for the said guardian's deed. They further pleaded that said quitclaim deed was also executed to Mrs. Maude Thompson for the purpose of ratifying said guardian's deed. L. O. McMillan answered and defended the ⅞ leasehold estate, alleging in substance that Mrs. Hammer and the other plaintiffs were advised and knew that he was contemplating purchasing said oil and gas leases and that he would not purchase same unless they executed said quitclaim deed and that upon such facts plaintiffs executed the quitclaim deed to Mrs. Maude Thompson; and he thereupon purchased said leasehold estate, paying a valuable consideration therefor, by reason of which plaintiffs were estopped to assert an interest therein as against him. The Tidal Oil Company was not served with citation, did not answer, and was later dismissed from that suit, as well as all other defendants, except Mrs. Maude Thompson and the heirs of W. B. Thompson, deceased, and L. O. McMillan. Plaintiffs by supplemental petition alleged facts by reason of which they claimed that the guardian's deed and the quitclaim were both void. Trial of the case resulted in a judgment entered November 16, 1934, in favor of Mrs. Hammer, awarding her recovery of the land and all mineral interest therein, except the ⅞ leasehold. The judgment recites that the court was of the opinion that Mrs. Hammer was entitled to recover from the

Thompson defendants title and possession of a ⅑ undivided interest in the 81 acres of land, together with all minerals and mineral rights therein, "subject, however, to the oil, gas and mining lease executed by Mrs. Maude Thompson et al, lessors, in favor of L. O. McMillan, lessee, and now owned by Tidal Oil Company." The judgment then decrees that Mrs. Hammer do have and recover of and from the defendants Mrs. Maude Thompson and the heirs of W. B. Thompson, naming them, title and possession of a ⅑ undivided interest in the 81 acres of land, and that plaintiffs take nothing as against the defendant L. O. McMillan. The Thompson defendants appealed from that judgment. The judgment of the trial court was affirmed by the Court of Civil Appeals, Thompson et al. v. Crim et al., 103 S.W.2d 855. The Supreme Court granted writ of error and, on March 27, 1939, affirmed the judgment of the trial court and of the Court of Civil Appeals. Thompson v. Crim, 132 Tex. 586, 126 S.W.2d 18.

By certain changes in name, merger and transfers, the Tide Water Associated Oil Company acquired all the assets, contracts and liabilities of the Tidal Oil Company. Continuously since March 1931, Tide Water Associated Oil Company and its predecessors have produced and the Tidal Pipe Line Company has removed oil from the 81 acres of land.

Upon the Supreme Court's having entered its judgment of affirmance in the Crim suit, Mrs. Hammer and her attorneys, to whom she had conveyed certain interests, made demand upon Tide Water Associated Oil Company for payment of the ⅑ of the ⅛ royalty oil produced from the land during the pendency of the Crim suit and recovered by her in that cause. The demand was refused, whereupon the present suit was filed by Mrs. Hammer and her attorneys against Tide Water Associated Oil Company, the Tidal Pipe Line Company, Mrs. Maude Thompson, and the heirs of W. B. Thompson, deceased, and their assignees, to recover ⅑ of the ⅛ royalty oil produced and removed from the land since the first production in 1931, to March 1939. The Tide Water Associated Oil Company and the Tidal Pipe Line Company defended on the ground, in substance, that the Tide Water Associated Oil Company and its predecessors had purchased and paid for said ⅑ of ⅛ royalty oil produced from the land, from the original lessors, Mrs. Maude Thompson and the heirs of W. B. Thompson, deceased, without having been notified by Hrs. Hammer or her attorneys in the manner and form of giving notice as provided for in said leases for change of ownership of the lessors. Trial of the case before the court without a jury resulted in judgment for plaintiffs, against all the defendants other than Tide Water Associated Oil Company and Tidal Pipe Line Company, for the value of ⅑ of ⅛ of the royalty oil produced from March 1931 to October 1, 1933; and against all the defendants including Tide Water Associated Oil Company and Tidal Pipe Line Company for the value of ⅑ of ⅛ of the royalty oil produced from October 1, 1933, to March 1, 1939. The judgment specified the interest of each plaintiff in the recovery, and names the amounts of recovery against each defendant; and it awards recovery in favor of defendants Tide Water Associated Oil Company and Tidal Pipe Line Company over and against the other defendants, in specified amounts, aggregating the amount recovered by plaintiffs against said Tide Water Associated Oil Company and Tidal Pipe Line Company. The defendants Tide Water Associated Oil Company and Tidal Pipe Line Company have appealed.

The oil and gas lease executed by Mrs. Maude Thompson and the heirs of W. B. Thompson, deceased, to Imperator Oil Company contains the following provision: " * * * no change in the ownership of land or assignment of rentals of royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment or a true copy thereof * * *." The oil and gas lease executed by Mrs. Maude Thompson and the heirs of W. B. Thompson, deceased, to L. O. McMillan contains the following provision: " * * * no change or divisions in ownership of the land, rentals, or royalties however accomplished shall operate to enlarge the obligations or diminish the rights of Lessee. No sale or assignment by Lessor shall be binding on Lessee until Lessee shall be furnished with a certified copy of recorded instrument evidencing same."

■ Appellants contend, in substance, that Mrs. Hammer in executing the quitclaim deed purporting to convey all her right, title and interest in the 81 acres of land to Mrs. Maude Thompson, and subsequently recovering judgment against

Mrs. Maude Thompson for ⅑ interest in the land, subject to the oil and gas lease executed by Mrs. Maude Thompson, Mrs. Hammer thereby acquired title to such ⅑ interest through and under Mrs. Maude Thompson; that the judgment in effect constituted a transfer of said ⅑ interest from Mrs. Maude Thompson to Mrs. Hammer; that as to the lessees, Mrs. Hammer by reason of said judgment took the position of a grantee or assignee of Mrs. Maude Thompson, the lessor; therefore appellants were not liable to Mrs. Hammer for the ⅑ of ⅛ royalty oil purchased from said lessor, Mrs. Maude Thompson, during pendency of the Crim suit and prior to being furnished with a certified copy of said judgment which was not furnished appellants until ·after the judgment became final by being affirmed by the Supreme Court March 22, 1939. Appellants cite, among others, the following authorities: Jackson v. United Producers' Pipe Line Co., Tex.Civ.App., 33 S.W.2d 540, writ refused; Humphrey v. Flanagan, Tex.Civ.App., 91 S.W.2d 449; Brandt v. Roxana Petroleum Corp., 5 Cir., 29 F.2d 980; Dormon Farms Co. v. Stewart, 157 Ark. 194, 247 S.W. 778; Standard Oil Co. of Louisiana v. Craig, 202 Ark. 168, 150 S.W.2d 744; 31 T.J. 1028, Sec. 314. The above authorities declare the rule that a lessee in an oil and gas lease is not liable to one subsequently acquiring a royalty interest from the lessor, until such lessee has been furnished with the character of notice of such transfer of interest as provided for in the lease. We are unable to agree with appellants' contention that such rule is applicable to the facts here presented. Mrs. Hammer did not acquire her ⅑ interest in the 81 acres of land from Mrs. Maude Thompson or the heirs of W. B. Thompson. She acquired it by inheritance from her mother, Mrs. Sallie Thompson, and expressly so pleaded her title in the Crim suit and alleged that the quitclaim deed as well as the guardian's deed was void. The judgment rendered in the Crim suit, in effect, treats the guardian's deed and the quitclaim deed as being void, and established title in Mrs. Hammer to the ⅑ interest inherited from her mother. It transferred no interest from the Thompsons to Mrs. Hammer, but to the contrary, it determined the fact that the Thompsons did not own such interest. Mrs. Hammer's recovery against the claim of the Thompsons was not through, under or by virtue

of said quitclaim deed, but in avoidance of it as well as the guardian's deed. The fact that Mrs. Hammer was estopped, as to McMillan, to assert her interest in the ⅞ leasehold, and the judgment decreeing that she take nothing as against him, by reason of which McMillan and his assigns became vested with title thereto, thus subjecting the interest recovered by her to the oil and gas leases now held by appellants, did not change the source from which Mrs. Hammer deraigned the title recovered by her. We do not think that the judgment in the Crim suit is to be construed as placing Mrs. Hammer in the position of a grantee or assignee of Mrs. Maude Thompson in the sense of permitting appellants, during pendency and until they had been furnished with a certified copy of its final determination, to purchase and acquire title from Mrs. Maude Thompson to the interest recovered by Mrs. Hammer.

■ Appellants purchased the minerals here involved during pendency of the Crim suit from the Thompsons who were defendants in that suit. Judgment in the Crim suit established title to such minerals in Mrs. Hammer who was a plaintiff in that suit. Appellants introduced no testimony tending to show that they purchased without actual notice of the Crim suit. On the other hand, appellees showed that L. O. McMillan by letter notified appellants' predecessors on September 25, 1933, of the pendency and setting for trial of the Crim suit. Appellees further showed that they properly filed lis pendens notice at the time of filing the Crim suit, July 13, 1932. Appellants are, under such facts, bound by the judgment rendered in the Crim suit, as to the minerals so purchased from the Thompsons during pendency of that suit. R.S., Articles 7391, 6640, 6641, 6642, 6643, Vernon's Ann.Civ.St. arts. 7391, 6640, 6641, 6642, 6643; Hartel v. Dishman, 135 Tex. 600, 145 S.W.2d 865; Rio Bravo Oil Co. v. Hebert, 130 Tex. 1, 106 S.W.2d 242; 28 T.J. 330, Sec. 19.

We have examined each of appellants' remaining propositions but do not think any of them presents error.

■ Appellees duly excepted and have filed cross assignments of error to that part of the judgment which denies them any recovery against appellants for the value of the ⅑ of ⅛ of the oil produced and converted during the period of time from

July 13, 1932 (the date of filing and giving lis pendens notice of the Crim suit), to September 25, 1933 (the date appellants were actually notified by McMillan of pendency of the Crim suit). It appears that appellants were affected with a lis pendens notice during said period of time, therefore appellees' cross assignments of error are sustained. Appellants' records show that the value of the ⅑ of ⅛ of the oil produced and converted during said period of time, less the amounts already paid on the judgment by W. B. Thompson and Will Thompson, is $487.67. The judgment of the trial court will be reformed so as to allow appellees to recover of appellants the further sum of $487.67 in addition to the amounts expressed in the judgment of the trial court, which recovery will be apportioned among the appellees according to their fractional interests as shown in the record.

As so reformed, the judgment of the trial court will be affirmed.