CASSITY et al. v. SMITH et al.

No. 6211.

Court of Civil Appeals of Texas. Texarkana.
April 3, 1946.

Rehearing Denied April 18, 1946.

Paul S. Colley, Jr., and Brachfield & Wolfe, all of Henderson, for appellants.

Long & Strong, of Carthage, and James & Lee, of Tyler, for appellees.

WILLIAMS, Justice.

This suit in the nature of a trespass to try title action and to remove cloud on title filed on August 11, 1945, by appellants, A. G. Cassity and children, against appellees, K. Hughes and R. E. Smith, defendants below, presents the question whether an oil and gas lease executed by R. L. Whitmire and wife, as lessors, to Cochran and Myers, as lessees, is still effective and in force or whether the lease covering 246 acres expired by reason of alleged nonpayment to Cassity of the annual delayed rental due May 31, 1945.

R. L. Whitmire and wife, the owners in fee of 266 acres of land out of the P. Flores, F. W. Smith, and S. Willis Surveys in Panola County, Texas, on May 31, 1943, as lessors, executed and delivered an oil and gas lease to Cochran and Myers, who in turn assigned to son Norman a certain 20-acre leasehold out of the above lands; and on December 20, 1943, assigned to K.

Hughes the leasehold covering the remaining 246 acres. The 20-acre leasehold assigned to Norman is not here involved. Hughes, on November 23, 1944, assigned the 246-acre leasehold to R. E. Smith, but reserved a 1/16 or 7/8 (overriding royalty free of all production costs) in the assignment. Under a deed dated February 12, 1944, filed for record February 14, 1944, Whitmire and wife conveyed the 266 acres in fee to Cassity and certain of his children. After their purchase of the land neither of the Cassitys, and it is not asserted that any of them or any one for them furnished either Hughes or Smith, the respective assignees of the leasehold, with a certified copy of a recorded instrument evidencing a change of ownership of the land out of the Whitmires into the Cassitys.

The oil and gas lease executed by Whitmire and wife is for a primary term of ten years. The provisions in the lease material here read as follows:

"If operations for drilling are not commenced on said land as above provided on or before one year from this date the lease shall then terminate as to both parties, unless on or before such anniversary date Lessee shall pay or tender to Lessor or to the credit of Lessor in Stone Fort National Bank at Nacogdoches, Texas (which bank and its successors are lessor's agent and shall continue as the depository for all rentals payable hereunder regardless of changes in ownership of said land or the rentals) the sum of $266.00 (herein called rental), which shall cover the privilege of deferring commencement of drilling operations for a period of twelve (12) months.

"In like manner and upon like payments or tenders annually the commencement of drilling operations may be further deferred for successive periods of twelve (12) months each during the primary term. The payment or tender of rental may be made by the check or draft of lessee mailed or delivered to Lessor or to said bank on or before such date of payment."

"The rights of either party hereunder may be assigned in whole or in part, and the provisions hereof shall extend to their heirs, successors and assigns; but no change or division in ownership of the land, rentals or royalties, however accomplished, shall operate to enlarge the obligations or diminish the rights of lessee and no change or division in such ownership shall be binding on Lessee until thirty (30) days after Lessee shall have been furnished by registered U.S. mail at Lessee's principal place of business with a certified copy of recorded instrument or instruments evidencing same. In the event of assignment hereof in whole or in part, liability for breach of any obligation hereunder shall rest exclusively upon the owner of this lease or of a portion thereof who commits such breach."

Shortly prior to the delayed rental payment date of May 31, 1944, and at the time K. Hughes owned the leasehold and the Cassitys owned the land in fee, Neal Powers, an attorney, then acting as agent of Hughes, remitted $246 in payment of the delayed rentals due May 31, 1944, to the depositary bank named in the lease, accompanied by a letter which reads:

"Tyler, Texas.
"May 16, 1944.
"Stone Fort National Bank
"Nacogdoches, Texas.
"Gentlemen:

"At the request of Mr. K. Hughes of Tyler, Texas, I am enclosing herewith his check in the sum of $246.00 in payment of rental on a lease which Mr. Hughes holds, covering lands formerly owned by R. L. Whitmire and wife, Ruth Whitmire.

"I have heard indirectly that Mr. Whitmire has sold this land to Mr. A. G. Cassity of Carthage, Texas; however, we have received no notice of such fact, and consequently, I am complying with the terms of the lease and tendering the money to your bank for the credit of Mr. Whitmire and wife.

"I assume that Mr. Whitmire is one of your customers, and would appreciate your ascertaining from him what disposition should be made of this rental payment.

"Will you please sign the enclosed receipt and return to me in the enclosed stamped and addressed envelope. I have added 25¢ to the amount of the check to cover your service charge. If this amount

is insufficient, please advise, and I will remit any additional amount necessary.

"Very truly yours,

"NP:GN     Neal Powers.

"ENC.(2)"

Upon receipt of above remittance and letter, the bank contacted Whitmire as to the disposition of the $246, and being informed by the latter that this rental belonged to Cassity, the bank gave Cassity a deposit for the amount. Cassity was informed of this payment of the delayed rentals and used such funds. The leasehold was in full force and effect at the time K. Hughes assigned the lease on November 23, 1944, to R. E. Smith.

Smith paid a substantial valuable consideration to Hughes for a group of leaseholds which included this one in controversy, and at the time received from Hughes a file on each lease. A carbon copy of above quoted letter from Powers was in the Whitmire lease file. One Sanders who handled the payment of delayed rentals for R. E. Smith saw and read the Powers letter prior to the time he remitted $246 to the depositary bank named in the lease to be credited to R. L. Whitmire and wife as payment of the delayed rental due May 31, 1945. The bank deposited the $246 to the credit of Whitmire and wife on April 30, 1945.

The jury found (1) that Cassity did not deliver to Neal Powers a carbon copy of the deed executed by Whitmire and wife to A. G. Cassity et al.; (2) that Neal Powers was acting as the agent of K. Hughes when he wrote above quoted letter; and (3) that the $246 deposited on May 23, 1944, in the Stone National Bank to the credit of A. G. Cassity was not so authorized to be made by K. Hughes. No other issues were requested or submitted to the jury.

In the judgment entered, all relief sought by the Cassitys was denied, with the decree that they take nothing as against the defendants. This judgment is affirmed. Brandt v. Roxana Pet. Co., 5 Cir., 29 F.2d 980; Dormon Farms Co. v. Stewart, 157 Ark. 194, 247 S.W. 778; Tidewater Associated Oil Co. v. Hammer, Tex.

Civ.App., 163 S.W.2d 232; 31 T.J., 1029; Summers on Oil and Gas, Vol. 2, Perm. Ed., p. 255. Under the terms of above quoted provisions of the lease no change in the ownership of the land operated to enlarge the obligations or diminish the rights of lessee and no change in such ownership became binding upon the lessee until 30 days after the lessee had been furnished with a certified copy of the recorded instrument evidencing same. Such a provision largely used in oil and gas leases is a valid provision. Appellees Hughes and Smith, each an assignee of the original lease, succeeded to above rights, Ferrell v. Deverick, 85 W.Va. 1, 100 S.E. 850, 851, for the lease further stipulated that "the rights of either party hereunder may be assigned, and the provisions hereof shall extend to their heirs, successors and assigns. Cassitys, who had actual notice of the existence of the lease, make no claim that they complied with above provisions of same.

The facts and circumstances above detailed do not support the contention of appellants that R. E. Smith waived the provision of the lease with respect to the required evidence of change in ownership. "Intent" is an essential element of a waiver, Goodwin v. Abilene State Bank, Tex.Civ.App., 20 S.W.2d 1090; 31 C.J.S., Estoppel, §§ 69, 70, pp. 263, 267; 43 T.J., p. 896. Smith's literal compliance with the terms of the lease in remitting the 1945 rental as above detailed, although he had seen and read the carbon copy of Powers' letter, refutes any claim that he waived or intended to waive the lease provisions. We need not determine whether the acts and conduct of Hughes with respect to a waiver, if in fact his acts would constitute a waiver, became binding upon Smith. For here, we have no jury findings to establish a waiver, 43 T.J. (Waiver) Sec. 8; City of Waco v. Thralls, Tex.Civ.App., 172 S. W.2d 142, 146.

An estoppel as urged by appellant is not tenable. "Estoppel rests largely upon injury or prejudice to the rights of him who asserts it." "Since the function and purpose of the doctrine are the prevention of fraud and injustice, there can

be no estoppel where there is no loss, injury, damage, or prejudice to the party claiming it." 19 Am.Jur. (Estoppel), Sec. 85; 31 C.J.S., Estoppel, § 74. The $246 to cover the delayed rental due in 1945 is still on deposit to the credit of Whitmire untouched by any one. Cassity has been advised that the deposit is there and has known this fact since June 10th or 11th, 1945, and testified that he had not contacted Whitmire or made any other move to obtain the deposit although he thought Whitmire would agree for him to have it as Whitmire had done in 1944.

The conclusions herein reached do no violence to the holding in Vaughan v. Littlefield, Tex.Civ.App., 4 S.W.2d 153, cited by appellants in support of their claims of a waiver, and an estoppel.

The judgment of the trial court is affirmed.