## ENDICOTT et al. v. PHILLIPS PETROLEUM CO.

No. 3730.

United States Court of Appeals
Tenth Circuit.

Jan. 27, 1949.

---

Roy C. Davis, of Hutchinson, Kan. (Paul R. Wunsch, of Kingman, Kan., on the brief), for appellants.

Darrall G. Hawk, of Oklahoma City, Okl., and D. E. Hodges, of Bartlesville, Okl. (Don Emery, Rayburn L. Foster, and R. B. F. Hummer, all of Bartlesville, Okl., on the brief), for appellee.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

This was an action filed in the District Court of Kingman County, Kansas, by Gilbert R. Endicott and Jeannette Endicott, the appellants, against Phillips Petroleum Company, a corporation, appellee, and against Plains Exploration Company, a corporation, and Nebraska-Wyoming Oil Company, a corporation, to cancel certain oil and gas leases covering the Northwest Quarter and the North Half of the Southwest Quarter of Section 21, Township 28 South, Range 9, West of the 6th P.M., and for damages.

The complaint alleged, in substance, that plaintiffs were the owners of the above described real estate, subject only to outstanding oil and gas leases; that Phillips Petroleum Company was the record owner of the lessee rights in and to the said oil and gas leases, except and subject to an assignment "from said Phillips Petroleum Company to defendant Plains Exploration Company of a portion of such lessee rights covering the North ½ of the Southwest ¼ of said Section 21, and except and subject to an assignment by said Plains Exploration Company to defendant Nebraska Wyoming Oil Company of a portion of the lessee rights respecting said 80 acres last described, all of said three defendants being record owners of lessee rights therein and claiming ownership in the aggregate of all of the lessee rights therein, defendants Plains Exploration Company and Nebraska Wyoming Oil Company being proper and necessary parties to a complete determination and settlement of the matters and things involved herein including the removal of the claimed liens and clouds upon the title of the plaintiffs to their said land."

In substance, the complaint further alleged that no drilling operations had been commenced nor had any timely delay rentals been paid for the purpose of deferring the commencement of a well, and that written notice of these facts had been sent to all the defendants. This notice stated that due to the failure of the defendants to commence drilling operations and/or to make timely delay rental payments, the plaintiffs elected to declare the leases terminated, forfeited and void insofar as they affected plaintiffs' property, and demanded that defendants release and surrender the leases of record. The notice further stated that if defendants failed to comply with this demand within twenty days, suit would be instituted to cancel such leases and for damages.

Defendants failing to comply with this demand, this suit was instituted praying judgment removing the alleged clouds of the leases on the title and quieting the title against defendants, and for damages for $100,000, less the established value of the leasehold at the time of the final determination of the cause.

Phillips filed a petition for removal on the grounds of diversity of citizenship between it and plaintiffs and that the complaint asserted a separable controversy between it and plaintiffs. The cause was accordingly removed to the United States District Court for the District of Kansas, where a motion to remand was filed by plaintiffs. Upon a consideration of this motion, the trial court concluded that a separable controversy was asserted against Phillips. It accordingly retained jurisdiction of this cause of action but remanded the cause asserted against the two remaining defendants, no diversity of citizenship existing between them and plaintiffs.

Error is assigned on the refusal of the trial court to remand the case in toto. This preliminary question will be disposed of before we go to a consideration of the assignments of error relating to the main issues in controversy in the trial.

It is our conclusion that the trial court did not err in retaining jurisdiction of the controversy with Phillips. Appellants take the position that they could not have instituted this action in the United States District Court for the District of Kansas because Phillips was not a resident of that district and could not have been sued therein, and that, therefore Phillips could not remove the case to a Federal Court in which it could not have been sued. While suits based on diversity of citizenship may be brought only in the District of the residence of either the plaintiff or the defendant, the same requirements do not exist in removal cases. An action properly begun in a State Court in a state in which neither the plaintiff nor the defendant resides may be removed to the Federal Court of the District of the State in which the suit is pending.[1]

Whether the suit was properly removed to the United States District Court depends upon whether there was a separable controversy between plaintiffs and Phillips. In determining whether such a controversy is present, in the absence of a charge of bad faith in joining defendants, we look only to the allegations of fact well pleaded in the complaint.[2]

B. F. DeWeese owned the land described in plaintiffs' petition, together with an additional forty-acre tract not in controversy, prior to the execution of the oil and gas leases in question. After his death, three separate identical leases, all dated March 22, 1944, were executed by different persons, all being the heirs of the deceased, thus conveying the entire leasehold to the lessee named therein. These leases were subsequently assigned to Phillips. Since the

[1] General Inv. Co. v. Lake Shore & M. S. Railway Co., 260 U.S. 261, 43 S.Ct. 106, 67 L.Ed. 244; Freeman v. Bee Machine Company, 319 U.S. 448, 63 S.Ct. 1146, 87 L.Ed. 1509; Lee v. Chesapeake & Ohio Railway Company, 260 U.S. 653, 43 S.Ct. 230, 67 L.Ed. 443; Moss v. Atlantic Coast Line R. Company, 2 Cir., 157 F.2d 1005.

[2] Pullman Company v. Jenkins, 305 U. S. 534, 537, 59 S.Ct. 347, 83 L.Ed. 334; Salem Trust Company v. Manufacturers' Finance Company, 264 U.S. 182, 189, 44 S.Ct. 266, 68 L.Ed. 628, 31 A.L.R. 867; Louisville & Nashville R. Co. v. Wangelin, 132 U.S. 599, 10 S.Ct. 203, 33 L.Ed. 473; State v. Neustadt, 10 Cir., 149 F.2d. 143; Preston v. Kaw Pipe Line Company, 10 Cir., 128 F.2d 162.

leases are identical, we will speak of them as though there were but a single lease covering the DeWeese land. Later Phillips assigned the lease so far as it related to the North Half of the Southwest Quarter of Section 21 to Plains Exploration Company, which, in turn, thereafter assigned a portion of the lessee interest therein to the Nebraska Wyoming Oil Company. After its assignment, Phillips was the owner of the leasehold interest only to the Northwest Quarter of Section 21. It had no remaining interest of any kind in the lease as to the North Half of the Southwest Quarter of Section 21.

■ The fact that Phillips reserved the right to go on the premises and take cuttings from any wells drilled thereon by its assignee or that it reserved the right to purchase the oil in the event of production, did not constitute an interest in the leasehold which made it a necessary party to an action for removal of the cloud thereof from the premises in the event the lease became null and void or had lapsed for any reason. At most these were contingent rights between it and its assignee, depending upon drilling operations and production resulting therefrom. If the lease expired without such operations, no rights whatever would accrue to or remain in Phillips.

We look then to the petition to ascertain whether the facts pleaded with regard to the assignment of the lease covering the North Half of the Southwest Quarter are such that it can be said that Phillips parted with all its right, title and interest in and to the same. The allegations of the complaint in this respect have been set out verbatim. Since we have a single lease covering the two tracts, the Northwest Quarter and the North Half of the Southwest Quarter, we think the language of the complaint that Phillips was at all times the record owner of the lessee rights to the oil and gas lease, except and subject to an assignment from Phillips to Plains Exploration Company "of a portion of such lessee rights covering the North ½ of the Southwest ¼ of said Section 21" must be construed to mean that the lease had been assigned insofar as it pertained to the North Half of the Southwest Quarter and that Phillips retained only that portion of the lease covering the Northwest Quarter. Any other construction would be inconsistent with the admitted facts. Phillips' general assignment of the North Half of the Southwest Quarter vested its assignee with the full and complete ownership of all the rights conferred by the lease.

■ It must then follow that Phillips, having parted with all its interest under the lease to the North Half of the Southwest Quarter, could not release the lease of record as to that tract, and likewise since the remaining two defendants never acquired any interest in the lease to the Northwest Quarter, they had no interest in the controversy and could not, even if they desired to do so, release that lease of record. The factual situation in this case is identical with that in Brown v. Empire Gas and Fuel Company, D.C., 26 F.2d 100, in which Judge McDermott held that there was present a separable controversy.

On the main question, it is urged that the court erred in concluding that under the facts and circumstances the lease had not expired for failure to make timely payments of delay rentals. The lease provided that if no well be commenced on or before March 22, 1945, it should terminate unless the lessee should on or before that date pay to the credit of the lessors in the First National Bank of Kingman, Kansas, the sum of $280, which should operate as a rental and cover the privilege of deferring the commencement of a well twelve months from that date.[3] It provided further that the drilling of the well could be extended for additional periods of twelve months by like payments in the same manner. The lease gave to both the lessors and the lessee the right to assign their respective estate in whole or in part, and provided that in such event the covenants of the lease should extend to such successors or assigns. It also provided that no change in ownership should be binding on the lessee until after the lessee had been furnished

---

[3] The payment of the $280.00 was rental for the forty acres not included in this action, as well as for the two hundred forty acres involved herein.

with a written transfer assignment or a copy thereof evidencing the transfer of such interest.

At the time of the execution of the lease, the land in question was owned in common. Bertha E. McKenna was the owner of an undivided one-fifth interest therein at the time she joined in the execution of the lease. Her interest in this land was noted on Phillips' records as a one-fifth interest. Thereafter, at a partition sale she became the purchaser and owner of the fee title to all the land in question and in March, 1946, received a sheriff's deed thereto. Subsequently she and her husband conveyed the land to the Endicotts by warranty deed which was filed of record May 1, 1946.

In June, 1946, Phillips received a letter from plaintiff, Gilbert R. Endicott, enclosing a copy of the deed from Bertha E. McKenna and husband. Upon receipt of this letter, Phillips changed its records to show the Endicotts to now be the owner of the undivided one-fifth interest which formerly belonged to Bertha E. McKenna. On February 26, 1947, Phillips mailed to the First National Bank of Kingman, Kansas, two drafts totaling $280.02, in full payment of the delay rental due on or before March 22, 1947, with directions to the bank as to how to credit the various payments. The bank was directed to credit the Endicotts with $48.00 representing an undivided one-fifth interest of the total rental payment on the two hundred forty acre tract in question. The bank wrote Phillips acknowledging receipt of the remittance with directions how to apply it, and further informed Phillips that Endicotts had informed it that Phillips had been notified of the change of ownership. In reply, Phillips stated that the directions it had given as to the manner in which the remittance should be applied correctly reflected the ownership of the land as shown on its books, but that if other transfers of interest had been made, instruments evidencing the same should be furnished for its prompt consideration.

On April 10, 1947, Phillips received from the bank the original sheriff's deed, and on April 17, 1947, an abstract of title, including the partition proceedings. After examining the deed and the abstract, Phillips, on May 13, 1947, tendered to the Endicotts, on behalf of itself and its assignees, $240.00 in payment of the delay rentals. This tender was refused. The decision in this case turns upon whether this was a timely tender.

The provision in the lease that no change in ownership in the land or assignment of rentals or royalties should be binding upon the lessee until after the lessee had been furnished with a written transfer or assignment or a true copy thereof was a valid provision. Sending the deed from Bertha E. McKenna to the Endicotts was not sufficient to show that the outstanding four-fifths interest had vested in Bertha E. McKenna so that it would pass under her deed to the Endicotts. Phillips was entitled to a copy of the partition sale proceedings and a sheriff's deed conveying the outstanding interest to Bertha E. McKenna.

In its Finding Number 12, the trial court found that Phillips did not receive the sheriff's deed until April 10, 1947, and the abstract and court proceedings until April 17, 1947. This finding finds ample support in the record. Not having been furnished with a copy of the sheriff's deed or the court proceedings by which the outstanding four-fifths interest passed to Bertha E. McKenna at the time it made its first remittance, Phillips was warranted in concluding that the deed from Bertha E. McKenna to the Endicotts conveyed to them only the interest shown by its books as belonging to her.[4]

The time between the receipt of the abstract on April 17, 1947, and May 13, 1947, was not an unreasonable time for the examination of the abstract of title and the correction of Phillips' records. The court was, therefore, warranted in finding that the tender of the $240 delay rentals to the Endicotts on May 13, 1947, was within a reasonable time after having been furnished with a sheriff's deed and the court proceedings and that the refusal of the Endicotts to accept this tender was without legal justification and that Phillips was en-

[4] Brandt v. Roxana Petroleum Corp., 5 Cir., 29 F.2d 980; Gulf Refining Company v. Shatford, 5 Cir., 159 F.2d 231; Dormon Farms Company v. Stewart, 157 Ark. 194, 247 S.W. 778; Humphrey v. Flanagan, Tex.Civ.App., 91 S.W.2d 449.

titled to a decree quieting its title and that the Endicotts were entitled to no relief.

The judgment, entered pursuant to these findings of fact and conclusions of law is correct and is, therefore, affirmed.