WILLIAM B. REYNOLDS V. JOHN LANSFORD.

Where property is conveyed by a debtor, in failing circumstances, to a third person, and by the latter conveyed by deed of gift to the wife of the former, it is *prima facie* fraudulent and void as to antecedent creditors.

Though the deed of the vendor may be fraudulent and void as to his creditor, yet, if the vendee go into possession, actual, exclusive and adverse, the Statute of Limitations will run in his favor and bar the rights of the creditor.

A point frequently arises, in cases of this character, as to the time of the commencement of the Statute against the creditor: whether before or after the recovery of his judgment, and the opinion seems to be, that the Statute would not commence until after judgment, as until then the creditor had no effectual means of enforcing his claim. But in this case no such question can arise, &c.

Under our former laws, donations between husband and wife were placed under restrictions. But, as the law now exists, there is no principle which would impair the right of a husband to settle his property upon his wife and family, when this can be done without injury to the rights of existing creditors.

Under the general policy of our laws, the right of the wife to hold property in her own right, without the intervention of a trustee, actual or constructive, cannot be impeached.

As a general rule, a wife can claim the benefit of the Statute of Limitations to protect her possession, to the same extent that it can be claimed by any other person; and, in ordinary cases, it would not be material, nor would it affect the rights of the wife, that the property was under the control and supervision of the husband.

In cases of this kind, where property (slaves) has been fraudulently conveyed, by an involved or insolvent debtor, for the benefit of his wife, and the property remains under the management and control of the husband as the law provides, the Statute of Limitations will not run in favor of the wife, against an antecedent creditor of the husband, unless the conveyance to her (or, perhaps, her claim of title) be recorded.

In trials of the right of property, levied on by execution, the benefit of the Statute of Limitations may be claimed without pleading it—there being no formal pleadings in such cases.

Appeal from Grimes. Tried before the Hon. Peter W. Gray. The facts are stated in the Opinion.

*J. B. & G. A. Jones*, for appellant.

*O. C. & R. K. Hartley*, for appellee.

HEMPHILL, CH. J. The appellee, John Lansford, recovered on the 2d December, 1845, in the District Court of Houston county, a judgment against John W. Adkins, for three hundred and ninety-four dollars, principal and interest. An execution was issued to Grimes county on the 13th October, 1853, which, on the 29th of the same month, was levied on a negro woman named Tina, as the property of the said John W. Adkins. On the 1st November, 1853, T. H. M. Rogers, as Administrator of Emily W. Adkins, deceased, filed a claim to the said negro woman, as the property of the estate of the deceased.

The issue for trial was, whether the negro woman was liable to plaintiff's execution at the time of the levy. As the negro was in possession of Rogers, the Administrator, at the time of

Reynolds v. Lansford.

the levy, the burthen of proof was on the plaintiff in execution ; and to sustain the issue, he introduced a copy of a bill of sale from John W. Adkins to Thomas H. M. Rogers, for several slaves, including Tina, for the expressed consideration of two thousand dollars, dated 4th April, 1845, and proved and filed for record in Houston county on the 8th of March, 1848 ; also, a copy of deed of gift from Rogers to his sister Emily M. Adkins and her children, the issue of the marriage between herself and John W. Adkins, dated 15th April, 1845, but not recorded until the 20th May, 1854. He also proved by Mr. Arrington, that he had known John W. Adkins in Washington county for the years 1839, 1840, 1841, up to the time of his removal to Houston county, about the year 1843 ; that when he first knew him he was a good farmer, doing very well ; had but little property, except his negroes ; that Adkins became considerably involved before he left Washington county, and, so far as witness knew, he has been becoming more and more involved ever since ; that in 1845 or 1846 Adkins removed to Grimes county, and since that time has had but little property except the negroes named in the bill of sale ; that he is now poor, and, to the knowledge of witness, had no property but one horse ; that witness bought the negro named Andy from J. W. Adkins, and that Thomas H. M. Rogers paid him the money he had paid for him and took the negro ; that Tina, with other negroes named in the bill of sale, remained in possession of Adkins and his wife until her death, and that the said John and Emily lived together as husband wife ; that in 1845 Rogers was probably not worth more than $5000, and would not be likely to give his sister and her children two thousand dollars worth of negroes. Plaintiff also offered a transcript of the judgment in evidence.

Defendant proved by several witnesses, that since Adkins and his family removed to Grimes county, Emily M. Adkins had exercised acts of ownership over the negro woman Tina and others named in the bill of sale ; that she hired them out,

received the pay therefor, and paid the taxes on them, and gave them in as her own property up to her death, but that Tina was cook and remained at home with the family ; that John W. Adkins and wife both controlled Tina as a man and wife usually do at home ; that John W. and Emily M. lived together as husband and wife until her death, and that the negro Tina lived in the family. One of the witnesses had purchased one of the negroes from the wife. Adkins, the husband, gave in the negroes for taxes in 1851, as agent of his wife, and the administrator of the wife has paid taxes on them since the year 1852.

The jury having found for the plaintiff, the defendant, on motion for new trial being overruled, appealed and assigns that there was error—

1st.   In the charge to the jury.

2nd.   In refusing to give the charges asked by defendant.

3rd.   In overrruling motion for new trial.

These assignments are extremely vague, and we will notice such points in them only as are taken in the brief of appellant.

And first, it is insisted that the conveyances were executed several months before the judgment was rendered against John M. Adkins, and that they are conclusive against the plaintiff, unless the indebtedness accrued before the execution of the conveyance, or unless credit was given after their execution upon the faith of representations made by Adkins and wife as to the ownership of the property, or, in other words, unless there was fraud in the conveyance of the negroes, by which the plaintiff's rights were affected.

This point might have been placed in a much more satisfactory position, had either party introduced evidence to show the time at which the debt accrued. If it existed at the time of the conveyance, this might have been easily established on the part of the plaintiff, by the introduction of a transcript of the record in the case, instead of which a transcript of the judgment only is offered, which gives no clue to the time of the

accrual of the debt, except by inference that the judgment being in the same year with the conveyances, the debt most probably originated before their execution.   The only fact in the case which gives a reasonable assurance that the debt accrued anterior to the bills of sale, is the order, endorsed on the execution, to sell for cash with appraisement.  The presumption is that this endorsement was made by the Clerk, in the due discharge of his duty, and that the debt must have been incurred before the first day of May, one thousand eight hundred and forty-two, (Art. 1344, Hart. Dig.) and therefore before the conveyances. The Judge below was of opinion, as may be inferred from the charge, that there was evidence conducing to prove the existence of the debt at the time of the conveyance.

The jury were instructed that if they believed from the evidence, that John W. Adkins was the owner of the slave levied on, that he was involved in debt and the plaintiff's claim was one of his debts, that being so involved he made a conveyance of the slave and others, constituting the larger part of his property, to his brother-in-law, who soon afterwards made a deed of gift to his sister, the wife of Adkins, and her children, and that Adkins and wife were living together and so continued together as man and wife until her death, they would be justified in inferring fraudulent intent in making the deeds, in absence of proof of fair and valuable consideration, which proof devolved upon the defendant.

This charge proceeds upon an assumption of the existence of the debt at the time of the conveyance, and that this was a conceded fact at the trial is manifest also from the circumstance that no one of the five instructions asked by defendant assumes as a basis that the indebtednesss accrued subsequently to the bill of sale.   We are relieved, therefore, from the necessity of discussing the principles upon which subsequent creditors claim to set aside the previous conveyance of a debtor ; and on the assumption that this was an antecedent debt, there is no doubt, upon the facts and upon the law, as correctly

given them in charge, the jury were justified in finding (as in effect they did) that as against the plaintiff, the conveyances were fraudulent and could not of themselves defeat his rights. The conveyance to Rogers had many of the badges of fraud. The vendor was much involved.   The greatest portion of his property was conveyed.  The vendee was a near relative.  No consideration was paid, and the possession, at least beneficially, remained with the vendor.

The next question presented by appellant is, as to the effect of the Statute of Limitations in bar of the right of the plaintiff to subject the property to levy under his execution.   The instruction to the jury upon this point, was to the effect that if they believed the deeds were made to defraud the creditors of Adkins, and that Adkins and his wife lived together as man and wife until her death, then they would find for the plaintiff, unless it be shown that the administrator of Mrs. Adkins had taken actual, exclusive, adverse possession of the negro at least two years before the levy of the execution.

It is admitted, in effect, by this instruction, that though the deed of a vendor may be fraudulent and void as to his creditors, yet, if the vendee go into possession, actual, exclusive, and adverse, the Statute of Limitations will run in his favor and bar the rights of the creditor.   This doctrine is certainly founded on principle, and has the sanction of very high authorities.   (Peck, R. 30 ; 7 Yerg. R. 212 ; 1 Humph. R. 346 ; Id. 353 ; 7 Id. 367.)   It is not questioned in this case and need not be discussed.

A point frequently raised, in cases of this character, as to the time of commencement of the Statute, against the creditor : whether before or after the recovery of his judgment ; and the opinion seems to be, that the Statute would not commence until after judgment, as until then the creditor had no effectual means of enforcing his claim.   But in this case no such question can arise, as the judgment was recovered nearly eight years before the levy of execution ; and the adverse possession,

if dating from the judgment, would have years since barred the creditor.

In cases of this kind, where property is fraudulently conveyed, by an involved or insolvent debtor, for the benefit of his wife, it is somewhat difficult to determine upon what shall be the tests by which the possession, though remaining apparently with the husband, shall, for the benefit of the wife, become adverse to the antecedent creditor, who has established his claim and recovered judgment against the debtor.

Under our former laws, donations between husband and wife were placed under restrictions. But, as the law now exists, there is no principle which would impair the right of the husband to settle his property upon his wife and family, where this can be done without injury to the rights of existing creditors ; and under the general policy of our laws, the right of the wife to hold property in her own right, without the intervention of a trustee, actual or constructive, cannot be impeached. As a general rule, the wife can claim the benefit of the Statute to protect her possession, to the same extent that it can be claimed by any other person who may be holding adversely to the rights of the real or pretended owner. In ordinary cases, it would not be material, nor would it affect the rights of the wife, that the property was under the control and supervision of the husband. This is a right conceded to the husband by the Statute, and its exercise cannot, of itself, impair the rights of the wife. This is the effect of the principles maintained in the cases of Parks v. Willard, 1 Tex. R. 350 ; Edrington v. Mayfield, 5 Id. 363, and others in which the rights of the wife in her separate property have been examined ; and it has been held in those cases, that the registration of the title of the wife is not essential to secure her property against the claims of the creditors of the husband. But there is a material distinction between those cases and the present. In the former, the wife had come lawfully, and without a shadow of fraud, into possession of the property. It was not acquired by donation from

the husband.  But here it arises from a post nuptial gift, by a husband who was indebted to insolvency, the manifest object and intent of the gift being to hinder and defraud his creditors.  Now, though a fraudulent vendee or donee may claim by notorious, exclusive and adverse possession, even as against creditors, and the wife has the same right to hold property that any other vendee or donee has, yet, under such circumstances, it cannot be considered as an infringement upon her rights, that she should be required to furnish conclusive evidence of her title and possession, and that this should be so notorious, that the creditor who has his judgment must, if he be not wilfully negligent, be informed of the fact.

The Statute declares that a conveyance of property on consideration not deemed valuable in law, shall be deemed fraudulent if not duly recorded, unless possession shall really and *bona fide* remain with the donee. (Hart. Dig. Art. 1452.)  Where the property is derived to the wife from the husband, and the possession is not apparently changed, there might be a question whether it could be held to remain really and *bona fide* with the donee ; but the title being recorded, the difficulty vanishes, and the conveyance cannot be regarded as fraudulent and void.  The fact of recording has, in this connection, peculiar potency.  It gives notice and makes a conveyance good and *bona fide* which, without it, would be void.  The wife cannot complain, then, in cases where an actual fraud has been attempted by the husband on his creditors, and she, as the beneficiary of the fraud, claims by gift from her husband, that she should be required to place her title on record, and that the existing creditor who has his judgment cannot be bound to notice any other evidence of her title until there be a record.  The evidence of adverse possession must be very clear, where the title has its inception in fraud ; and as from the marital relation it may be very doubtful whether possession be really in the husband or the wife, it should be made clear by placing the title of the wife on record,

and this with the other acts and indications of adverse possession, proved in the cause, would be sufficient to sustain the plea of Limitation.

It seems to have been conceived below, that adverse possession could not be claimed for the wife as long as she and her husband lived together as man and wife. This is deemed to be erroneous. The fact of union for life, with her husband, cannot affect injuriously the rights of the wife, to acquire and hold property in accordance with law. Nor, in ordinary cases, is she bound to give any more notice than other owners of property. But in cases like the present, originating in fraud, the existing creditor ought to be apprised by the certain evidence of a record, before his rights can be affected, that the property has been changed from the husband to the wife.

At the time this debt was contracted, the property belonged to the husband. The deed of gift to the wife was not recorded until several months after the levy of the execution. Nor is there any evidence that the wife ever claimed the property as her own in the county where the conveyances were made and the judgment was recovered, or that the creditor was apprised of such claim. But we believe the safest rule, and one more in analogy with the provisions of the Statute of Frauds, to be, that in cases like the present, the wife must give notice of her claim, by record, and this with the other indications of adverse possession would give her the benefit of the Statute, notwithstanding she and her husband may have continued to live together as man and wife.

This decision has reference only to the rights of creditors antecedent to the conveyances or deeds of gift. What effect the claim of the wife, to this property, even without being recorded, might have on the rights of subsequent creditors, who were or might have been apprised of such claim, is another question, which it is not necessary to examine or discuss.

It has been suggested that the Statute of Limitations, not being pleaded, could not be set up by the claimant. But the

provision of the Statute of 1852 which declares that the Statute shall not be available unless specially pleaded in the answer, applies only in cases of formal pleadings, and not, as in this case, where there were no pleadings for either plaintiff or defendant. Nor need it be set up by a plaintiff, where it is the the foundation of a suit for the recovery of property. It is required only when insisted on as a defence.

We believe that the justice of this case has been attained, and that there was no such error as could injuriously affect the rights of appellant ; and it is ordered that the judgment be affirmed.

Judgment affirmed.