MRS. MAUDE THOMPSON ET AL V. J. M. CRIMM ET AL.

No. 7257. Decided March 22, 1939.
(126 S. W., 2d Series, 18.)

*Ramey, Calhoun & Marsh,* of Tyler, for plaintiffs in error.

Where a guardian, purporting to act for his ward, takes a deed in her behalf, reciting the consideration to be the exchange of land belong to the ward, and places the deed of record, and the ward, upon the removal of her disabilities of minority, sells the land so received, her title being referable only to the deed made to her guardian, she is estopped to deny the validity of the exchange or to claim that she did not know

the facts or her legal rights at the time of the exchange. Recitations in her deed, to the exchange amounts to a ratification of such exchange and a knowledge of the facts under which it was made. Willis v. Gay, 48 Texas 469; Gilbrough v. Runge, 99 Texas 539, 91 S. W. 566; 20 R. C. L. 353.

*R. T. Jones,* of Henderson, *McEntire, James & Shank,* of Tyler, for defendants in error.

The defendant in error not knowing at the time she disposed of her undivided interest in the land received by her guardian, that such exchange was void and not binding upon her, had the right under the law to repudiate the exchange of land by her guardian upon learning that such exchange was made and not binding upon her and it was not error for the trial court to refuse to instruct a verdict in favor of defendants. Miller v. McAllen, 253 S. W. 901; Swiney v. Wormack, 175 N. E. 419; Humble Oil & Refining Co. v. Jeffrey, 38 S. W. (2d) 374.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

This suit was instituted in the District Court of Rusk County by a number of parties, including Mrs. Sallie Bell Hammer, joined by her husband. Mrs. Hammer is now the only plaintiff remaining in the suit, and she will be designated herein as plaintiff. She recovered in the district court an undivided 1/9 interest in a certain 81 acre tract of land in Rusk County, and the judgment of the trial court was affirmed by the Court of Civil Appeals. 103 S. W. 855.

When Mrs. Hammer was thirteen months of age her mother died. Her father had died a short time before. Upon the death of her mother she inherited the 1/9 interest in the 81 acres of land. Shortly thereafter L. B. Thompson qualified as guardian of plaintiff and several of her brothers and sisters. On May 4, 1916, in pursuance of orders theretofore obtained from the probate court, the guardian conveyed to W. B. Thompson the 81 acres of land, a part of which is in controversy here. The consideration for this conveyance was 77 acres of land conveyed to the guardian by W. B. Thompson in exchange, both tracts being valued at $1000 each. The deed by W. B. Thompson and wife to L. B. Thompson, guardian, contains the following recital:

"KNOW ALL MEN BY THESE PRESENTS: That we, W. B. Thompson and wife Maude Thompson of the County of

Rusk, State of Texas, for and in consideration of the sum of One Thousand ($1000.00) Dollars to us paid, and secured to be paid by L. B. Thompson, Guardian of the persons and estate of Ora Thompson, Bernice Thompson, Mary Thompson, Jennie Lee Thompson, Grant Thompson, J. B. Thompson, Rastus Thompson, Homer Thompson, and Sallie Bell Thompson, Minors as follows: The exchange of deeds to the hereafter described real estate belonging to us to L. B. Thompson, guardian as aforesaid for the real estate deeded to W. B. Thompson on this day by said Guardian fully described in said Guardian's deed and which said real estate herein conveyed by us to said Guardian is valued at $1000.00, have GRANTED, SOLD AND CONVEYED * *"

Plaintiff at the time of this exchange was two or three years of age. She was then living with her guardian and continued to live with him until she was about seven years of age. She then lived with relatives until she was fourteen years old. Shortly after becoming fourteen years of age she married. Within two years after her marriage she sold an undivided interest in the 77 acres to Lonnie Barber for $167.50. The only proof of such sale is her own testimony, as no deed is shown in the record. There is nothing to show that her husband joined in such sale, but we will assume that he did.

It seems to be undisputed that at the time plaintiff made the sale to Barber of an interest in the 77 acre tract she knew nothing about such tract having been conveyed to her former guardian in exchange for the 81 acres in which she had an inheritance, and she had no actual knowledge that she had any interest in the 81 acres which had been exchanged to W. B. Thompson. It is claimed that the recitals in the deed executed by Thompson, and which are set out above, were sufficient to give her knowledge. Under the view we take of the case this becomes immaterial.

In 1931 plaintiff and her husband executed a quitclaim deed to Mrs. Bell Thompson, one of the plaintiffs in error, of all her right, title and interest in the 81 acres. The jury found that at the time she executed this deed she did not know and had no information that the 81 acres was land which her guardian had deeded to W. B. Thompson in exchange for the 77 acre tract. Apparently upon this finding the quitclaim deed went out of the picture entirely because only two propositions are presented in this Court in application for writ of error, and they summarize the substance of all propositions in the Court of Civil Appeals. The plaintiffs in error, who are claiming the 81 acres under the guardian's deed, seek to uphold said deed

upon the grounds of ratification and estoppel, as is more fully shown by their two propositions as follows:

### "Proposition First.

"Where a guardian, purporting to act for his ward, takes a deed in her behalf which, on its face, recites the consideration therefor to be the exchange of lands belonging to the ward, and places the deed of record; and the ward, upon removal of the disability of minority, sells the land so received in the exchange, her title thereto being referable alone to the deed made to her guardian, she is estopped to deny the validity of the exchange or to claim that at the time of the sale she did not know the facts or that she did not know her legal rights.

### "Proposition Second.

"Recitations in a deed, showing that the consideration therefor is the exchange of lands, charge a person claiming title to the land under the deed with a knowledge of such facts, and a sale of said land, the claim of title being referable alone thereto, amounts to a ratification of the entire transaction and estops the person so dealing with the land from claiming that she did not have knowledge of the facts or that she did not intend by the sale of the land to ratify the transaction in which it was acquired."

■■ It appears to be admitted that the deed by the guardian conveying the 81 acres to W. B. Thompson was void because the probate court had no jurisdiction to authorize an exchange of lands. This was the holding of the Court of Civil Appeals and is not questioned here. This being true, the title of plaintiff to her undivided interest in the 81 acres did not pass. The guardianship terminated by her marriage, or before by the death of the guardian, and she became fully vested in her own right with the title to her undivided interest in the 81 acres. She lost her minority by marriage, but at the same time took on the disabilities imposed by law upon a married woman as regards her separate estate in lands. We do not have here, therefore, the question of a minor, after attaining majority, confirming or ratifying an act of a guardian, but we have purely and simply the question of a married woman disposing of her separate real estate.

■ Without regard to the question of whether or not a void instrument may be ratified by a married woman, and without regard to the question of when such a ratification may be made effective, it is certain that as regards the separate estate of

a married woman in land a ratification cannot be made except in language showing a clear intent and purpose to ratify and confirm, expressed in an instrument executed in the manner required by law for conveyance by a married woman of her separate estate in land. Breitling v. Chester, 88 Texas 586 32 S. W. 527; Montgomery v. Hornberger, 40 S. W. 628 (writ ref.); Merriman v. Blalack, 121 S. W. 552, Sub. 5, page 557 (writ ref.). In this last case it was said:

"It is further insisted that this deed was validated by the subsequent ratification thereof by Mrs. Merriman after she became a feme sole. This contention is based upon the recital in the deed from Elizabeth Merriman Fusselman, and others to Julio Guzman that the land had been conveyed by Elizabeth Merriman to Henry Merriman. The deed from Mrs. Merriman to Henry Merriman being clearly void, we do not think that this recital can be given effect as a confirmation, validation, or re-execution of it, so as to make it operative as a conveyance of Mrs. Merriman's title. This recital cannot operate as a conveyance or a re-execution of the former void deed. Breitling v. Chester, 88 Texas 586, 52 S. W. 527. 'Confirming may make good a voidable or defeasible estate, but cannot operate upon an estate void in law, but only confirms its infirmity.' 1 Dev. Deeds, sec. 17; Branham v. San Jose, 24 Cal. 585; Chess v. Chess, 1 Pen. & W. (Pa.) 32, 21 Am. Dec. 350. There are no 'apt words of conveyance' from Mrs. Merriman, in the bare recital in the deed to Guzman, that the land had been conveyed by Elizabeth Merriman to Henry Merriman, along with the other recitals as to the chain of title, so as to make it operate as a new grant, without which such recitals could not operate to impart to the void deed an efficacy it did not before possess. Montgomery v. Hornberger, 16 Texas Civ. App. 28, 40 S. W. 628."

It is obvious therefore that defendants must rely upon estoppel and not ratification.

■ Was plaintiff estopped? At the most all she did was to appropriate the consideration or benefit of the attempted sale of her interest by the guardian. The selling of her purported interest in the 77 acres taken as consideration for the 81 acres, and retaining the amount she received therefor, had no more legal effect than her act would have had if the guardian had sold the 81 acres for cash and had paid to her in money her purported part of the consideration. It is elementary in this State that a married woman, even if she has executed and delivered a deed to her separate estate which is void because of

failure to comply with statutory requirements, cannot be estopped by acceptance and appropriation of the benefits. This has many times been held under circumstances much stronger than those presented here. In 23 Texas Jurisprudence, page 315, sec. 275, it is said:

"It is well settled that a married woman is not estopped by her invalid deed to recover her property upon the plea she has accepted and retained the consideration therefor. Perforce of the statute, the title to her separate real estate or her right in the homestead can pass only through a conveyance executed in the manner required by law. Nothing she may do will take the place of such instrument; neither acquiescence, ratification, waiver or estoppel upon such grounds will preclude her recovery. To permit such pleas would emasculate the statute. Accepting benefits is but a species of ratification and cannot take the place of the deed. A purchaser must be held to know as matter of law that her title can only be passed in the manner prescribed by law."

This is in accord with many decisions. Williams v. Ellingsworth, 75 Texas 480; McLaren v. Jones, 89 Texas 131; Daniel v. Mason, 90 Texas 240; Pickens v. Bacle, 104 S. W. (2d) 483; Hannay v. Harmon, 137 S. W. 406 (writ ref.) ; Harrison v. Sherman, 66 S. W. (2d) 701 (writ ref.) ; Jarrell v. Crow, 71 S. W. 397.

In some of the foregoing cases it was expressly held that a married woman was not estopped to claim her separate estate, where attempt had been made to convey same by a void instrument, by joining with her husband in the sale of land taken in exchange.

In the case of Gillean v. Witherspoon, 121 S. W. 909, the court discussed the precise question. In that case a guardian made sale of land belonging to his ward, but there was no order of court confirming the sale. It was consequently held void. The ward, after marriage, received the consideration paid to the guardian, and executed a receipt therefor. Discussing the questions of ratification and estoppel the court said:

"This court is also of the opinion that the guardian's deed did not operate to pass the title of Ethel Wilkes to Stribling and Houston, upon the theory that, by accepting from her guardian the purchase money or a part thereof paid him by them, with a full knowledge of all the facts, she ratified and confirmed said deed. Being a married woman at the time she settled with her guardian and received from him the purchase

money paid for the land by Stribling and Houston, she could ratify or confirm the deed made to them only by an instrument in writing, to that effect, acknowledged in conformity with the statute regulating conveyances by married women. The law prescribes the mode of conveying the wife's separate lands, and that mode must be observed. 'It cannot be waived.' It is said that to ratify is only tantamount to an assent in the first place, and that it can never be equivalent to a deed and separate acknowledgement. Speer on Married Women, secs. 42, 131-133. Again, it has been repeatedly held in this State that, 'to estop a married woman from asserting her rights to land, it is essential that she should be guilty of some positive fraud, or else of some act of concealment or suppression which in law would be equivalent thereto.' In Cauble v. Worsham, 96 Texas 86, 70 S. W. 737, 97 Am. St. Rep. 871, it is said that to hold that a married woman 'is estopped by her bare parol agreement to pass away her title, even for a consideration received, would be to authorize a mode of conveyance forbidden by the statute by the mere substitution of terms'—citing Berry v. Donley, 26 Texas 738; Fitzgerald v. Turner, 43 Texas 79; McLaren v. Jones, 89 Texas 131, 33 S. W. 849; Steed v. Petty, 65 Texas 490.

"There is no pretense that Mrs. Andrews did anything that induced Stribling and Houston to purchase the land from Buchanan as her guardian, and such purchase was made by them prior to the settlement with and acceptance of the purchase money paid Buchanan."

For the reasons herein stated the judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court March 22, 1939.