**TOMPKINS et al. v. AMERICAN REPUBLICS CORP. et al.**

No. 4748.

Court of Civil Appeals of Texas. Beaumont.

April 24, 1952.

Rehearing Denied May 21, 1952.

O'Fiel & O'Fiel, Beaumont, for appellant.

Blades, Kemnerly, Fisher & Whitworth, Houston, B. F. Whitworth, Houston, Stephenson & Stephenson, Orange, Terrell Buchanan, Silsbee, of counsel, for appellee.

COE, Chief Justice.

This was a suit in trespass to try title brought by appellants against the appellees involving a 40 acre tract of land out of the league and labor of land in Hardin County granted to the heirs of George Brown. At the close of all of the evidence, appellees filed a motion for an instructed verdict, such motion was granted and the jury returned a verdict in favor of the appellees and judgment was rendered that appellants take and recover nothing. From this judgment the appellants, who were the plaintiffs in the trial court, have perfected their appeal.

The 40 acre tract of land here involved is the north 40 acres of a tract of 160 acres once owned by Jack and Mary Toushake (sometimes spelled Touchette). The 40 acre tract is 350 vrs. wide east and west and 645.1 vrs. long north and south. On June 17, 1910, Jack and Mary Toushake conveyed to their son Joe Toushake and his wife, Bettie, a tract beginning at the northwest corner of the 40 acre tract and running east 175 vrs.; thence south 645.1 vrs.; thence west 175 vrs.; and thence north 645.1 vrs. to the place of beginning. This description covered the West 20 acres of the west half of the 40 acre tract. A few months thereafter Jack and Mary Toushake conveyed to Joe and Bettie Toushake, by field note description, the east 20 acres or the east half of the 40 acre tract. In 1913 Joe and Bettie Toushake conveyed to E. Williford and A. J. DuBose the same tract of land as was conveyed to Joe and Bettie Toushake by the deed from Jack and Mary dated June 17, 1910, using the same field note description as was used in such deed, which described the west half of the 40 acre tract. Such west half was subsequently conveyed to Mrs. A. J. (Stella)

DuBose, the wife of Dr. A. J. DuBose as her separate property. On January 22, 1915, Mrs. DuBose made an attempted conveyance of such west half to Mrs. Hettie Belle Tompkins (now Mrs. Westerterp, one of the plaintiffs). Dr. DuBose is not a party to this instrument and did not join in it. The Notary's certificate with respect to the acknowledgment of Mrs. DuBose was not in compliance with the statute relating to the acknowledgment of a married woman. Mrs. DuBose undertook to reserve a vendor's lien to secure the payment of a note given as part of the consideration. On Febraury 24, 1921, Mrs. DuBose and her husband signed an instrument attempting to release the vendor's lien above mentioned. Dr. DuBose is not named as a party to the said instrument in the body thereof and the acknowledgment of Mrs. DuBose thereto is not in compliance with the statute relating to the acknowledgment of a married woman. On January 22, 1915, the date of the execution of the above deed and on February 24, 1921, the date of the instrument undertaking to release a vendor's lien, Hettie Belle Tompkins was the wife of Richard Tompkins, now deceased. The plaintiffs in this suit, other than the Westerterps and Mevo Oil Company, are the children of Richard Tompkins and claimed through him. Hettie Belle and Richard Tompkins were divorced in 1923 and she married J. N. Tompkins, Richard's half-brother, in 1925 and they were husband and wife until they were divorced in 1934. By deed dated July 12, 1928, A. J. DuBose and Mrs. Stella DuBose conveyed such west half of the 40 acre tract to Hettie Belle Tompkins, and on August 4, 1928, Hettie Belle Tompkins and husband, J. N. Tompkins, conveyed such west half to Mrs. Bertie Mary Robinson, the deed containing recitals constituting all such land as the separate property and the estate of Mrs. Robinson. This deed is attacked by appellants as not having been properly acknowledged by Mrs. Tompkins as a married woman, and will be referred to further on in the opinion.

It is the appellants' contention and was so alleged by them, and certain evidence offered to support such allegations, that it was the intention of Joe and Bettie Toushake to convey, and the intention of E. Williford and A. J. DuBose to acquire by the deed of 1913 the entire 40 acres instead of only the west 20 acres or the west half which was described in and conveyed by the deed. They further contend that such intention existed in the various transactions down to the deed from A. J. DuBose and wife to Hettie Belle Tompkins in 1928. They do not, however, seek a reformation of any of the deeds. They obtained and attempted to introduce in evidence certain deeds referred to as correction deeds from the widow and heirs of E. Williford and from the sole heir of Dr. and Mrs. DuBose, purported to correct prior deeds so as to convey the entire 40 acres. Those instruments are dated in December, 1949. Appellants also contend that the inception of and title to the land involved was by force of the deed from Mrs. DuBose of January 22, 1915, and that the deed of 1928, executed by Dr. A. J. DuBose and wife, Stella, was only a confirmation of the former deed and therefore such property constituted the community property of the appellant Mrs. Westerterp and Richard Tompkins, who was her husband on the date of the first deed, and being community property upon his death one-half interest thereto passed to and became vested in his children who are among the appellants heretofore referred to.

It is the contention of the appellees, defendants below, that no title whatsoever, either equitable or legal, passed out of Mrs. A. J. DuBose until July 12, 1928, and that no title of any character vested in Mrs. Tompkins until such date and that therefore Richard Tompkins had no title to nor any interest in said lands for the reason that on that date she was the wife of J. N. Tompkins. Further, that by the deed from Hettie Belle Tompkins and husband, J. N. Tompkins, to Mrs. Bertie Mary Robinson, the title to the west half vested in Mrs. Robinson. No conveyance is shown out of Joe and Bettie Toushake to the east half of the 40 acre tract until July 15, 1933. On such date Joe Toushake executed and delivered to Mrs. Bertie Mary Robinson a quitclaim deed covering the

entire 40 acre tract, such deed containing recitals constituting the land separate property and estate of Mrs. Robinson. By instrument dated March 24, 1949, Bettie Toushake ratified and confirmed the deed of Joe and adopted it as her act and deed. It is the contention of the appellees that the deed of Joe Toushake vested title to the east half in Mrs. Robinson and that the instrument executed by Bettie effected no change in the status of the title, because the land was the community property of Joe and Bettie, was not their homestead on the date of said deed and that he, as head of the community estate, conveyed the title of the community property by his deed even though it be a quitclaim deed. It is also the contention of the appellees that appellants had no title to the east half of the land in controversy and that the so-called correction deeds and evidence of the intention of the parties to the deeds covering the west half are all inadmissible, because such deeds are plain and unambiguous and the intention of the parties thereto cannot change the legal effect of the plain and unambiguous terms and provisions thereof, including the description of the land conveyed thereby in the absence of the reformation of said deeds and instruments, and reformation is not sought by this suit.

The appellants have grouped in their brief Points Nos. 1, 10, 10½ and 10¾ in which they complain of the action of the trial court in excluding from the evidence the deed proffered by them from Mrs. A. J. DuBose to Hettie Belle Tompkins, dated January 22, 1915, for the reasons that same had been of record for more than 10 years before the filing of the suit and there being nothing in the deed indicating that Mrs. A. J. DuBose was a married woman at the time of this execution, and since such deed recited payment of a valuable consideration it raised the presumption of an innocent purchaser in favor of the appellant Hettie Belle Tompkins (now Mrs. Westerterp); it not being shown that Mrs. Tompkins had any notice that Mrs. DuBose was a married woman and further the evidence did not show that Mrs. A. J. DuBose was not abandoned and was not deserted by her husband and the property involved being her separate property, that such deed should have been admitted in evidence. At the time this deed was offered in evidence by appellants, appellees objected on the ground that Mrs. A. J. DuBose was a married woman, the wife of Dr. A. J. DuBose, and living with her husband on the date of the purported deed; and that she was not joined in the execution of said instrument by her said husband; and further, that the certificate of acknowledgment to said instrument was not in compliance with the statute governing the acknowledgment of a married woman and the property described in said instrument being the separate property of Mrs. DuBose, the deed was a nullity and void as a conveyance or for any other purpose and, therefore, not admissible in evidence. The court sustained such objection. However, for the purpose of the appellants' bills of exception, said deed is shown in the statement of facts. It is undisputed in the evidence that on the date that this deed was signed by Mrs. DuBose that she was married to and living with her husband, Dr. A. J. DuBose. This evidence was offered by appellants and came from the only heir of Dr. and Mrs. DuBose. There is no contention that the land that Mrs. DuBose undertook to convey was not her separate property. Article 1299, R.C.S., of Texas, makes it mandatory that the husband shall join in the conveyance of the separate property of his wife, and further provides that a conveyance of separate property of the wife shall not take effect until the same shall have been acknowledged by her privily and apart from her husband and certified to as pointed out in Articles 6605 and 6608. No contention is made that Dr. A. J. DuBose attempted to join his wife in this conveyance, neither was her acknowledgment taken as provided in Article 6605, and the Notary did not certify thereto in a manner required by Article 6608. It is stated in 23 Tex.Jur., 245, Sec. 214, "Under all of the Texas acts it has been required that the husband join in the instrument of conveyance of the wife's separate lands. * * * As we have seen, under early law this assent was not required to be evidenced in the instrument of conveyance, but it is the un-

doubted rule that an attempted conveyance by the wife in which the husband does not thus join is a nullity. * * * But the failure of the husband to join in the wife's instrument of conveyance is fatal to the instrument; the deed is void and cannot be ratified by either husband or wife by any act short of a compliance with the statute." This rule seems to have been consistently followed by the courts of this State. The contentions made by the appellants under these points were squarely before the court in Ford v. Ballard, 1 Tex. Civ.App. 376, 21 S.W. 146, 147, where the appellants were complaining of the action of the trial court in excluding the deed of a married woman in which her husband did not join. In passing upon this question, it was said: " * * * The record contains no evidence of any concealment, misrepresentation, or other improper conduct on the part of either the husband or the wife, except as the bringing of this suit might be so construed. It must therefore be held that these deeds were properly excluded, the wife's deed to her separate property, without the joinder of her husband, being a nullity", citing several cases.

■ In the case of McAnulty v. Ellison, Tex.Civ.App., 71 S.W. 670, 673 it was said: " * * * The conveyance of Francis A. Ellison alone to her mother—she being a married woman and living with her husband at the time—is void, and conveyed no title whatever to her interest in said estate: first, because her husband failed to join in said conveyance; and second, because the attempted acknowledgment to the same is fatally defective." Many cases could be cited supporting this rule, including the case of Keller v. Downey, Tex.Civ.App., 161 S.W.2d 803, where this Court held that even a married woman conveying her separate property was void where the statute relating to her acknowledgment thereto was not complied with. In affirming the judgment of this Court, the Supreme Court, 143 Tex. 171, 183 S.W.2d 426, 428, said: "Under all the decisions of this Court on the question, the separate acknowledgment of a married woman in the manner and form required by Articles 6605 and 6608 of our Civil Statutes of 1925 is absolutely es-

sential to the validity to any instrument conveying her separate lands in this State. Noncompliance with such statutes renders the instrument an absolute nullity." It is the appellants' contention that since neither the instrument nor the acknowledgment thereto revealed that Mrs. A. J. DuBose was a married woman at the time she executed the deed and having paid a valuable consideration, they were innocent purchasers and therefore such deed was admissible in evidence. This contention has no merit. Our Supreme Court in the case of Daniels v. Mason, 90 Tex. 240, 38 S.W. 161, 162, in reversing the judgment of the Court of Civil Appeals, said: "We are of opinion that the trial court erred in its first conclusion of law, to the effect that the heirs of Nora Daniels were estopped. She did nothing more than execute and deliver the deed, and probably receive the purchase money. If the mere execution of a deed and receipt of the purchase money constitute an estoppel, then in all cases, though a married woman has no capacity to convey by deed wherein she is not joined by her husband, nevertheless the deed and its subsequent recording by the purchaser would pass the title by estoppel. Thus the attempt to make a conveyance which she had no legal capacity to make would of itself be held sufficient to estop her and her heirs from denying its binding force. This would virtually remove the disability of coverture. Such a rule has never been recognized in this state." And further: " * * * In the case before us the legal title was in Nora Daniels, but during coverture, in the absence of special circumstances, not shown to have existed, she was without capacity to convey, whether the land be considered community or her separate estate; and the rules of equity, established for the protection of bona fide purchasers against secret or undisclosed equities in the thing conveyed, afford purchasers from her, and those claiming under them, no protection against the consequences of such want of capacity, though they were ignorant thereof." To the same effect is the holding in Humble Oil & Refining Co. v. Downey, supra. Many other cases could be cited supporting the rule, but we feel that the

above cited cases and the cases cited therein are enough to cite on these points. Under the authorities heretofore cited, appellants' points set out above are overruled as well as Point No. 2, which complains of the action of the trial court in excluding from the evidence the deed from Mrs. A. J. DuBose to Hettie Belle Tompkins. We note in passing that the case of Foster v. Christensen cited and quoted from by the appellants, in support of this point, was reversed by the Supreme Court in an opinion reported in Tex.Civ.App., 67 S.W.2d 248.

■ Appellants have grouped Points 3, 11, and 12 in their brief in which they complain of the action of the trial court in refusing to receive in evidence the release of vendor's lien signed by A. J. Du-Bose and Mrs. Stella DuBose purporting to release a vendor's lien as retained in the deed dated January 22, 1915 from Mrs. Du-Bose to Hettie Belle Tompkins, and excluding the deed of January 22, 1915 heretofore referred to, contending that even though the purported deed of January 22, 1915 is void as a conveyance that, first, it was sufficient as a contract to convey under the provisions of Article 1301, R.C.S. of Texas, and it should be given effect as such, and second, that it was ratified by a release of vendor's lien dated February 24, 1921 and by the deed from Dr. and Mrs. DuBose to Hettie Belle Tompkins, dated July 12, 1928, and that such deed was admissible on such grounds and for such purposes. Article 1301 reads as follows: "When an instrument in writing, which was intended as a conveyance of real estate, or some interest therein, shall fail, either in whole or in part, to take effect as a conveyance by virtue of the provisions of this chapter, the same shall nevertheless be valid and effectual as a contract upon which a conveyance may be enforced, as far as the rules of law will permit." We have been cited no case and we know of none which has applied the provisions of this Article to a situation where a married woman has attempted to convey her separate estate by an instrument not in compliance with the statutes relating thereto. It is stated in 23 Tex.Jur. 270, Sec. 234, that this Article has no application to the deed of a married woman which is not executed in compliance with the law. To give it such effect would be to destroy the statutes of conveyance by a married woman, citing cases. See, also, Speer, Law of Marital Rights in Texas, 3rd Edition, Sec. 243, wherein it is stated, in effect, to give the Article such an effect as is contended for here by the appellants would destroy the statutes of conveyance, and be in the face of hundreds of decisions holding that defectively executed deeds by married women are nullities. The release of the vendor's lien was not properly acknowledged by Mrs. DuBose as a married woman as was the deed of January 22, 1915. In the case of Pickens v. Bacle, 129 Tex. 610, 104 S.W.2d 482, 485, it is said: "It has been many times held that a married woman cannot make any contract with reference to her homestead or her separate estate which is not a present conveyance of the whole or a part of her title", citing many cases. To our minds none of these cases cited by the appellants support their contention under these points and they are overruled. For additional authorities, see Thompson v. Crim, 132 Tex. 586, 126 S.W. 2d 18; Holland v. Votaw, 62 Tex.Civ.App. 91, 130 S.W. 882. Neither can the deed of July 12, 1928, in which Dr. A. J. DuBose and his wife conveyed the same land as was described in their deed of January 22, 1915 to Hettie Belle Tompkins be considered as ratifying and confirming and thereby making valid the deed of January 22, 1915. There is no question in our minds but that the deed of Mrs. DuBose to Mrs. Tompkins of January 22, 1915 was absolutely void. It was said in Merriman v. Blalack, 56 Tex.Civ.App. 594, 121 S.W. 552, 557: "Confirmation may make good a voidable or defeasible estate, but cannot operate upon an estate void in law, but only confirms its infirmity." To the same effect in Montgomery v. Hornberger, 16 Tex.Civ.App. 28, 40 S.W. 628; Chester v. Breitling, 88 Tex. 586, 32 S.W. 527, 528, where the Supreme Court said: "It would seem that, the deed as originally delivered being void, it could be re-executed, but not ratified so as to give it a retroactive effect." Further, there is nothing in the deed of July 12, 1928 expressing an intent on the part of Dr. and

Mrs. DuBose to ratify and make valid the void deed of 1915. The only reference to the void deed in the 1928 deed is for descriptive purposes. In Thompson v. Crim, supra [132 Tex. 586, 126 S.W.2d 20], it was said: "* * * it is certain that as regards the separate estate of a married woman in land, a ratification cannot be made except in language showing a clear intent and purpose to ratify and confirm". For the foregoing reasons, these points are overruled.

 Appellants' Points 4, 5, 6, 7, and 13 have been grouped for briefing and will be so treated by us. Appellants contend under these points that the trial court erred in excluding a deed from J. W. DuBose to Hettie Belle Tompkins, et al., dated March 24, 1949, purporting to be a deed of correction to show a conveyance of 40 acres instead of 20 acres as contained in the original deed from Mrs. A. J. DuBose to Hettie Belle Tompkins. Also a deed from Mrs. E. Williford, et al., purportedly for the same purpose. Appellants contend, also, that such deeds were admissible for the purpose of showing an unjust acquisition of the property by appellee Bertie Mary Robinson, as was plead by them. They further complain of the action of the trial court in excluding the testimony of J. W. DuBose as contained in his answer to the 12th interrogatory propounded to him, wherein it is said that J. W. DuBose stated the reason for the making and giving of the deed of correction to Hettie Belle Westerterp (formerly Tompkins) and her children, was to correct the mis-description in the original deed from Mrs. A. J. DuBose, dated January 22, 1915, and the deed of July 12, 1928, wherein 20 acres only were conveyed instead of the 40 acres originally contemplated. Also, the testimony of Mrs. Dora Williford as to her purpose in executing the deed of December 7, 1949, which was substantially the same testimony as that of J. W. DuBose. By this proffered testimony appellants were seeking to show that it was the intention of the parties to convey the entire 40 acres and that the correction deed referred to had the effect of reforming all such instruments so that they would describe the entire 40 acres of land here in-

volved rather than the west half only. The appellees objected to the admission of said instruments on several grounds, the chief ground being that the said instrument and recitals contained therein constituted an attempt to alter, vary, change and contradict the plain and unambiguous description contained in the prior instruments. therein referred to, without seeking to reform said instruments. Such objection was sustained. However, such instruments are contained in the statement of facts for the purpose of appellants' bill. The testimony of the witnesses was excluded on the same ground. All of the deeds above referred to which appellants undertook to change by the proffered deeds and oral testimony are plain and unambiguous and no contention is made to the contrary. This being a suit in trespass to try title and not one for the reformation of a deed and no allegation of fraud, accident or mistake in the preparation or execution of said instruments being alleged or proven, we think it is well settled that such a deed cannot be made to convey more or less land than described therein, especially in a suit of trespass to try title as is this suit. It seems to be the rule that nothing passes by a deed except what is described in it, whatever the intention of the parties may have been. See Gorham v. Settegast, 44 Tex.Civ.App. 254, 98 S.W. 665; Davis v. Davis, 141 Tex. 613, 175 S.W.2d 226, 229, wherein it is said: "It is our opinion that to sustain the ruling of the Court of Civil Appeals and the contention of the respondents would be to permit the admission of extrinsic evidence either to contradict the plain legal effect of the three deeds or to render wholly ineffective the deed from Jeff D. Davis to his wife conveying the undivided one-half interest. This cannot be done in the absence of allegations of fraud, accident or mistake in the preparation or in the execution of the written instruments. There is no such pleading in this case. 'It is well settled that the effect of a deed cannot be varied simply by showing that the grantor misunderstood the legal effect of its terms, or intended a different effect from that which the language of the instrument imports.'" In the case of Stroope v. Byrd, Tex.Civ.App., 101

1008

S.W.2d 624, 625, it was said: "* * * The testimony of appellees that it was not the intention of the parties to their deed of October 26, 1931, to include lots 1, 2, and 3 varied the terms of the deed, and was, therefore, inadmissible on that ground; for this testimony to be admissible, appellees should have pleaded fraud, accident, or mistake in the execution of the deed, and should have prayed for its reformation. With this deed outstanding against them, appellees could maintain their action in trespass to try title only by reforming their deed to appellant." A similar ruling was made by this Court in the case of Huddleston v. Allen, Tex.Civ.App., 85 S.W.2d 1094, and is squarely in point and refutes the contention made by the appellants. Therefore, there was no error in excluding these instruments and the oral testimony of the witnesses and these points are overruled.

■ Appellants' Point No. 8 is to the effect that the trial court erred in instructing the jury to find in favor of the defendants and against the plaintiffs, which was done at the close of all of the evidence, for that the testimony of the plaintiffs received in evidence and the testimony proffered by plaintiffs, which the court rejected, was sufficient to establish plaintiffs' right of recovery, and the case was entitled to be submitted to the jury. Under this point the entire claim of the appellants is set out and a discussion of it would require a re-hash of all that we have said and will say hereafter, and for this reason we overrule this point.

■ Under appellants' Point No. 9 they complain of the action of the trial court in instructing a verdict against them on the assumption that Bertie Mary Robinson had acquired title to the land in controversy under one or more of the statutes of limitation, for the reason that during all of the time from 1928 on up until 1947 the defendant Bertie Mary Robinson was a married woman, the wife of Roy Robinson, and she being a married woman, and the property in controversy being the community property of Bertie Mary and Roy Robinson, only Roy Robinson, by his acts

and conduct, could set in motion the acts and matters going to show an assertion of limitation to the property in controversy and claim by wife of ownership by herself alone during the existence of the marriage, would not be available to the wife for the purposes of limitation for the reason that management and control of the community property belonging to the community lies in the husband. The evidence reflects that the deed from Mrs. Tompkins et vir. to Mrs. Robinson and the deed from Joe Toushake to Mrs. Robinson contained recitals constituting the land the separate property of Mrs. Robinson. There seems to be no contention made with reference to the use and occupancy and claim to the land by Mrs. Robinson, appellants' contention being based on the proposition that Mrs. Robinson, being a married woman, could not set in motion the statute of limitation under a claim asserted by her and not shown to have been joined in by her husband. Appellants cite some cases relating to community property. There was testimony, which to us, seems not to have been disputed in any manner that in 1929 Mrs. Robinson placed a tenant on the east side of the 40 acre tract who fenced a garden and truck patch which remained there through the year 1945; that in 1932 an enclosure was made around the entire 40 acres and that such enclosure remained until 1944, during which time it was used for pasturage purposes and the fence was sufficient to serve as an enclosure for livestock, and that during all that period of time appellee Bertie Mary Robinson was asserting claim to the 40 acre tract. Further, that during all of this period of time Mrs. Robinson was holding under deeds duly registered, one of the deeds describing the west half and the other deed describing the entire 40 acres. The record shows that she has paid the taxes on the land in controversy for each year since 1928, and beginning with the year of 1939 through the year 1949 she has paid the taxes each year before they became delinquent. We are of the opinion that the evidence was sufficient to show, as a matter of law, that appellee Mrs. Robinson had acquired title by limitation to the land

in controversy since we are unable to agree with appellants' contention that a married woman's claim and possession of her separate estate cannot set in motion the statutes of limitation. None of the authorities cited by appellants in support of their contention seem to us to support their argument. Under Article 4614, R.C.S. of Texas, Vernon's Ann.Civ.St. art. 4614, a wife has the right of sole management and control of her separate property except that she cannot convey it without the joinder of her husband, and it seems reasonable that she could, either in person or through a tenant of her own choosing, cultivate or use the property without her husband's concurrence. The deeds under which she claims constituted the property here involved as her separate estate and any benefit of the statutes of limitation to the title so acquired would inure to the benefit of her separate estate. See: 23 Tex.Jur. 80, Sec. 56 and cases there cited. Also, 23 Tex.Jur. 138, Sec. 109. In Reynolds v. Lansford, 16 Tex. 286, the Supreme Court said: "It seems to have been conceived below, that adverse possession could not be claimed for the wife as long as she and her husband lived together as man and wife. This is deemed to be erroneous. The fact of union for life, with her husband, cannot affect injuriously the rights of the wife, to acquire and hold property in accordance with law. Nor, in ordinary cases, is she bound to give any more notice than other owners of property * * *."

As we view the record in this case, we are convinced that the appellee Mrs. Robinson had matured title by limitation to the land here involved under both the 5 and 10-year statutes of limitation, Vernon's Ann.Civ.St. arts. 5509, 5510. Ordinarily this conclusion would appear to be sufficient to dispose of this case, but inasmuch as the appellants have presented some points relative to the validity of the deed from J. N. Tompkins and Hettie Belle Tompkins to Mrs. Bertie Mary Robinson, it will be necessary to discuss their points raising this question.

[12–15] Under appellants' Point No. 15 they complain of the error of the trial court in permitting to be offered in evidence by appellees, over appellants' objections, the deed dated August 4, 1928 allegedly signed by Hettie Belle Tompkins and J. N. Tompkins to Bertie Mary Robinson, the appellee and grantee named in said deed, reportedly acknowledged before R. L. Rutan, a Notary Public, for the reason that said deed was void; that said Notary did not properly make his certificate of acknowledgment and that he did not after its alleged signing examine Hettie Belle Tompkins separately and apart from her husband and did not explain the transaction to her, and did not comply with the statutes relating to the taking of a married woman's acknowledgment. At the time the deed from Hettie Belle Tompkins and husband, J. N. Tompkins, to Bertie Mary Robinson of date August 4, 1928 was offered in evidence the appellants objected to the introduction of said deed on the ground that it was void for the reasons set out in this point. The acknowledgment and certificate of the Notary Public, R. L. Rutan, fully complied with the requirements of the statutes with reference to the taking and certifying to the acknowledgment of a married woman. R. L. Rutan, the Notary Public who took the acknowledgment of Mrs. Tompkins to the deed in question, testified that he had been a Notary Public for 30 years or more; that he was a Notary Public in 1928 and that at such time he knew J. N. Tompkins and wife, Hettie Belle Tompkins, and had occasion in several transactions in which they were connected to act as a Notary Public or abstracter or trustee in deeds of trust. He identified his signature as a Notary to the deed in question and stated in substance that although he had no independent recollection of the particular transaction, he said that based upon his certificate of acknowledgment he knew that he took the acknowledgment to the deed, and based upon his certificate he testified that the recitals contained in the certificate were true and correct and state what happened on the occasion. At that time he was familiar with the requirements of the law with respect to a married woman's acknowledgment. He was then asked the following

question: "Q. I will ask you to state whether or not it was at that time, and had been before that time, your habit and custom, to which you have strictly adhered, that you strictly complied with and followed the statute relating to the taking of a married woman's acknowledgment to a conveyance of property?" To this question he answered: "A. That is the only way I can remember how I did, by never doing any other way except a certain, definite way, according to the statute, as my father, who was an attorney, taught it to me." This question was objected to by appellants. The objection was overruled and the action of the trial court forms the basis of one of appellants' points. Under the case of Lancaster v. Whaley Lumber Co., Tex.Civ.App., 18 S.W.2d 796 there was no error in admitting this testimony. It seems to be the established law that where the certificate of acknowledgment is in due and legal form it is conclusive of the facts therein stated unless fraud or imposition is alleged and proved where the party has submitted himself to the jurisdiction of a Notary Public for the purpose of acknowledging the instrument. The substance of Mrs. Westerterp's, formerly Mrs. Tompkins, testimony with reference to the execution of this deed and the acknowledgment thereto is to the effect that she had no recollection of having signed a deed to any land in Hardin County and would not have done so had it been explained to her what she was doing; that while the signature attached to the deed which is offered in evidence looked like her signature she was sure that it had not been explained to her. She had some recollection of appearing before a Notary Public but thought it was during cold weather, while the acknowledgment of the deed was in August. The testimony of her husband, J. N. Tompkins, is to the effect that Mrs. Westerterp, then Mrs. Tompkins, wanted to sell the Hardin County land and that she knew about the transaction. There was other evidence which went to refute her statement that she did not know that she had executed the deed to the Hardin County land.

There was evidence to the effect that she had undertaken to sell the land to other parties; that she had ceased to render and pay taxes on the land since about 1930. Her husband also testified that she had signed the deed and appeared before the Notary Public, and he knew something had been said about the acknowledgment but he did not remember the details other than he thought it was before the instrument was signed. Hundreds of cases could be cited which would support the action of the trial court in admitting this deed in evidence, among which is Cockerell v. Griffith, Tex.Civ.App., 255 S.W. 490; Kimmell v. Tipton, Tex.Civ.App., 142 S.W. 421; Robertson v. Vernon, Tex.Com.App., 12 S.W.2d 991; Ward v. Weaver, Tex. Com.App., 34 S.W.2d 1093; Ellington v. Bryant, Tex.Civ.App., 293 S.W. 327; Haskins v. Henderson, Tex.Civ.App., 2 S.W.2d 864. The rule is well stated in 1 Tex.Jur. 601, Sec. 199, as follows: "A decided judicial tendency to view with suspicion and distrust attempts to discredit certificates of acknowledgments, and, where it is shown that the party whose acknowledgment is supposed to have been taken actually appeared before the Notary for the purpose of acknowledging the instrument, and the Notary has placed his certificate thereon in statutory form, the evidence, in order to impeach such certificate, must be clear, cogent, and convincing beyond reasonable controversy." In support of this rule, see: Blankenship v. Lusk, Tex.Civ.App., 77 S. W.2d 341 and cases there cited. Even had Mrs. Westerterp's testimony been more direct and positive, and more certain that she had not acknowledged the instrument in question as provided by the statute, it would not be sufficient to overcome the certificate of the Notary Public unless supported by other evidence. In this case such evidence as there might be to corroborate her evidence is so weak and indefinite it is, to our minds, entirely insufficient to void the certificate of acknowledgment to the deed in question. For these reasons this point is overruled.

Appellants have several other points in their brief which we have not discussed,

but we have considered all of them and are of the opinion that they do not reflect any error and are therefore overruled. It necessarily follows that we are of the opinion that the judgment of the trial court should be affirmed, and it is so ordered.